**Jeffrey LONDON, Appellant,**

**v.**

**Leticia LONDON, Appellee.**

**No. 14–01–00603–CV.**

Court of Appeals of Texas,
Houston (14th Dist.).

Nov. 14, 2002.

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

Pamela E. George, Houston, for Appellant.

Walter P. Mahoney, Jr., Houston, for Appellee.

Panel consists of Justices HUDSON, FOWLER, and DUGGAN.*

**MAJORITY OPINION**

J. HARVEY HUDSON, Justice.

Jeffrey London ("Jeff") appeals the trial court's modification order increasing his monthly child support from $1,500 to $4,500 for his two children and awarding $40,000 in attorney fees to his former wife, Leticia London ("Leticia"). Leticia appeals the trial court's modification order restricting the children's primary residence to Harris County and awarding Jeff the sole right to make education decisions for the children and more periods of possession. We affirm, in part, and reverse and render, in part.

## I. BACKGROUND

Jeff and Leticia's final decree of divorce was signed on December 27, 1995. Jeff filed a petition to modify the parent-child relationship in which he sought the right to establish the children's primary residence, or, in the alternative, modification of his periods of possession to correctly reflect the actual possession being exercised by the parties, and an extension of the restriction regarding the children's primary residence as set forth in the divorce decree. Jeff also sought the sole right to make education decisions for the children. Leticia subsequently filed a petition to modify the parent-child relationship seeking an increase in child support and removal of the same restriction regarding the children's primary residence which Jeff sought to extend.

The issues concerning the right to establish the children's primary residence and the restriction of the children's primary residence were tried to a jury. The jury found Leticia should have the exclusive right to establish the primary residence of the children, but that the children's primary residence should be restricted to "Harris County and any contiguous counties." The issues concerning child support, attorney fees, periods of possession,

* The Honorable Lee Duggan, Jr., retired Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

and the right to make education decisions were tried to the court. The trial court awarded attorney fees to Leticia in the amount of $40,000 and increased the amount of monthly child support from $1,500 to $4,500. The court awarded Jeff the sole right to make the decisions regarding the children's education and additional periods of possession. Although the jury found the children's primary residence should be restricted to "Harris County and any contiguous counties," the trial court stated in its order that their primary residence was restricted to Harris County.

## II. LIMITED APPEAL

As a preliminary matter, Leticia asserts Jeff has not presented a sufficient record on appeal because he requested only a partial, rather than a complete, reporter's record for his appeal. The rules of appellate procedure authorize limited appeals. *Furr's Supermarkets, Inc. v. Bethune,* 53 S.W.3d 375, 377 (Tex.2001) (citing TEX.R.APP. P. 34.6(c)(1)). If the appellant requests a partial reporter's record, he must include in the request a statement of the points or issues to be presented on appeal and will accordingly be limited to those points or issues. TEX.R.APP. P. 34.6(c)(1). Our review of the record shows Jeff complied with the rule for filing a limited appeal by filing with his request for a partial reporter's record a statement of the issues he intended to present in this appeal. For the issues raised in Jeff's appeal, we must presume the partial reporter's record " 'constitutes the entire record for purposes of reviewing the stated points or issues.' " *Furr's Supermarkets, Inc.,* 53 S.W.3d at 377 (quoting TEX.R.APP. P. 34.6(c)(4)). "This presumption applies even if the statement includes a point or issue complaining of the legal or factual insufficiency of the evidence to support a specific factual finding identified in

that point or issue." TEX.R.APP. P. 34.6(c)(4).

A review of the record shows that while Leticia filed her own notice of appeal, she did not file a notice of limited appeal stating the issues she intended to present on appeal. TEX.R.APP. P. 34.6(c)(1). Therefore, because Leticia did not follow the procedure provided in TEX. R.APP. P. 34.6(c)(1), she is not entitled to the presumption that the partial record constitutes the entire record for the issues she raised in her appeal. Leticia, moreover, did not request the remaining portions of the reporter's record. If the appellant fails to present a complete reporter's record on appeal, the court of appeals must presume the omitted portions are relevant and support the trial court's judgment. *Feldman v. Marks,* 960 S.W.2d 613, 614 (Tex.1996). Therefore, in considering Leticia's issues on appeal, we must presume the omitted portions of the record support the judgment of the trial court.

## III. JEFF'S APPEAL

### A. Child Support

In his thirteenth through eighteenth issues, Jeff claims the trial court abused its discretion in increasing his monthly child support payments from $1,500 to $4,500 because the evidence is legally and factually insufficient to support such an increase. A trial court's child support order will be overturned only upon a showing of an abuse of discretion. *Rodriguez v. Rodriguez,* 860 S.W.2d 414, 415 (Tex.1993). A trial court abuses its discretion when its ruling is arbitrary, unreasonable, or without reference to any guiding rules or legal principles. *K–Mart Corp. v. Honeycutt,* 24 S.W.3d 357, 360 (Tex.2000). Under the abuse of discretion standard, the legal and factual sufficiency of the

evidence are not independent grounds of error, but are merely factors in assessing whether the trial court abused its discretion. *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex.1991); *Zieba v. Martin*, 928 S.W.2d 782, 786 (Tex.App.-Houston [14th Dist.] 1996, no writ).

We review the trial court's findings of fact for legal and factual sufficiency of the evidence by the same standards applied in reviewing the evidence supporting a jury's finding. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex.1994). When reviewing the legal sufficiency of the evidence, we consider only the evidence and inferences tending to support the trial court's finding, disregarding all contrary evidence and inferences. *Bradford v. Vento*, 48 S.W.3d 749, 754 (Tex.2001). A "no evidence" point will be sustained if there is no more than a scintilla of evidence to support the finding. *Minyard Food Stores, Inc. v. Goodman*, 80 S.W.3d 573, 577 (Tex.2002). In conducting a factual sufficiency review, we must examine the entire record, considering both the evidence in favor of, and contrary to, the challenged finding, and set aside the finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex.1998).

The trial court may modify a prior child support order if "the circumstances of the child or a person affected by the order have materially and substantially changed since the date of the order's rendition." TEX. FAM.CODE ANN. § 156.401(a)(1) (Vernon Supp.2002). Jeff claims there was no evidence regarding the financial circumstances of the children or the parties affected by the order at the time the order was entered. The trial court did not make a finding on whether there was a substantial change in circumstances as to the children or either Leticia or Jeff as a basis for the modification in child support.[1]

■■■ In determining whether there has been a material and substantial change in circumstances, it is well settled that the trial court must compare the financial circumstances of the children and the affected parties at the time the existing support order was entered with their circumstances at the time the modification is sought. *Tucker v. Tucker*, 908 S.W.2d 530, 532 (Tex.App.-San Antonio 1995, writ denied); *Hammond v. Hammond*, 898 S.W.2d 406, 407–08 (Tex.App.-Fort Worth 1995, no writ); *Penick v. Penick*, 780 S.W.2d 407, 408 (Tex.App.-Texarkana 1989, writ denied); *Liveris v. Ross*, 690 S.W.2d 60, 61 (Tex.App.-Houston [14th Dist.] 1985, no writ). Without evidence of

---

1. Leticia argues the issue of change in circumstances was submitted to the jury. The issue submitted to the jury concerned modification of possession of and access to the children. The question submitted to the jury asked:

> Do you find from a preponderance of the evidence that:
> 1. (a)The circumstances of the children, or Leticia or Jeff London have materially and substantially changed since December 27, 1995;
> Or
> (b) That the Divorce Decree has become unworkable or inappropriate under the current circumstances;

> And
> 2. A modification of the Decree would be a positive improvement for and in the best interest of the children.

The above question tracks the language of former Section 156.301 of the Family Code, which sets forth the grounds for modification of possession and access. Act of June 19, 1999, 76th Leg., R.S., ch. 1390, § 15, 1999 Tex. Gen. Laws 4700, *repealed by* Act of June 16, 2001, 77th Leg., R.S., ch. 1289, § 12, 2001 Tex. Gen. Laws 3111. Therefore, issue of change in circumstances with regard to the issue of child support was not before the jury.

the circumstances at the time the existing support order was entered, the trial court cannot determine whether there has been a material and substantial change in the circumstances of the children or the parties affected by the order. *Swate v. Crook*, 991 S.W.2d 450, 453 (Tex.App.-Houston [1st Dist.] 1999, pet. denied); *Liveris*, 690 S.W.2d at 61. As the movant, it was Leticia's burden to show the requisite material and substantial change in circumstances since the entry of the most recent order. *In re Striegler*, 915 S.W.2d 629, 635 (Tex. App.-Amarillo 1996, writ denied); *Holley v. Holley*, 864 S.W.2d 703, 706 (Tex.App.-Houston [1st Dist.] 1993, writ denied).

Leticia presented no evidence of the financial circumstances of the children, her, or Jeff at the time the support order was entered in 1995 in the divorce decree. At most, Leticia testified about an interest in a joint venture she received in her divorce, which was worth about $1,000,000. Leticia testified that Jeff informed her the joint venture assets were being sold and she "should be receiving a check very soon." Leticia did not receive any money from the sale of the joint venture assets and "on the eve of the trial in this case," she found out the joint venture was not worth anything. Leticia stated she was counting on that money to assist her in supporting the children.

Leticia, however, never testified she had been relying on or otherwise receiving any income from the joint venture. Moreover, Leticia did not present any other evidence of the financial circumstances of either her or the children or the children's needs at the time of the divorce when the child support order was entered. Because there is no evidence of the financial circumstances of the children or the affected

parties at the time of the prior child support order, the trial court abused its discretion in increasing Jeff's monthly child support obligation. Jeff's thirteenth through eighteenth issues are sustained.

### B. Attorney Fees

In his first through twelfth issues, Jeff claims the trial court abused its discretion in awarding attorney fees in the amount of $25,000 to Leticia's attorney, Walter Mahoney, and attorney fees in the amount of $15,000 to Leticia because the evidence is legally and factually insufficient to support such awards.

The issue of attorney fees was raised at a hearing on the motion in limine prior to the jury portion of the trial. Leticia sought to exclude the testimony of Jeff's expert witness, who was to testify on the issue of the effects of relocation on children, on the ground that she had not been provided with an expert report. Jeff, in turn, sought to exclude testimony by Leticia's attorney, Walter Mahoney, because, with the exception of Mahoney's resume and contract with Leticia establishing a nonrefundable retainer, the underlying documents supporting Mahoney's fees had never been produced pursuant to Jeff's discovery requests. Mahoney further informed the trial court there were no invoices because he had not billed Leticia.[2] The trial court gave the parties a choice: either Jeff's expert and Mahoney both would be allowed to testify or neither would be allowed to testify. When the parties could not come to an agreement, the trial court ruled that neither Jeff's expert nor Mahoney would be allowed to testify.

---

**2.** Mahoney stated to the court, "We are testifying as to my attorney's fees and there are no documents that I would rely upon to testify as to my attorney's fees other than those ones that have been provided."

In proceedings before the trial court on August 29, 2000, Leticia again raised the issue regarding her request for attorney fees. The trial court ruled attorney fees with regard to the attorney ad litem would be addressed, but attorney fees for Leticia would not be addressed for the same reason as before, i.e., because she had not produced the documentation underlying her claim for attorney fees. The trial court, nonetheless, awarded attorney fees in the amount of $25,000 to Mahoney, and $15,000 to Leticia for attorney fees she had already paid.

## 1. Family Code

■ Under the Texas Family Code, it is within the trial court's discretion to award reasonable attorney fees in a suit affecting the parent-child relationship. TEX. FAM.CODE ANN. § 106.002 (Vernon Supp.2002); *Bruni v. Bruni,* 924 S.W.2d 366, 368 (Tex.1996). Attorney fees rendered in a suit affecting the parent-child relationship may be awarded as necessaries to the children. *Roosth v. Roosth,* 889 S.W.2d 445, 456 (Tex.App.-Houston [14th Dist.] 1994, writ denied); *Daniels v. Allen,* 811 S.W.2d 278, 280 (Tex.App.-Tyler 1991, no writ). This is premised on the notion that a parent has an obligation to support his minor children. *Roosth,* 889 S.W.2d at 456; *Daniels,* 811 S.W.2d at 280; *Creavin v. Moloney,* 773 S.W.2d 698, 702–03 (Tex. App.-Corpus Christi 1989, writ denied).

During the proceedings before the trial court, Leticia introduced into evidence a financial information sheet, which included:

Attorneys' Fees Paid to Date

| Lynne Holder | $ 8,345.49 |
|---|---|
| Walter Mahoney | $ 5,000.00 |
| Dennis Kelly | $ 1,250.00 |
| Warren Cole | $ 400.00 |
| Bruce Kessler | $ 250.00 |
| John Pavlas | $ 350.00 |
| **Total** | **$15,595.49** |

Leticia's financial information sheet also included:

Unpaid Attorney's Fees to Date

| Walter Mahoney | $20,581.50 |
|---|---|
| Linda Thompson | $ 1,000.00 |
| Lynne Holder | $ 8,770.45 |
| **Total** | **$31,770.45** |

Leticia testified she owes more than $45,000 in attorney fees, which included about $31,000 in unpaid fees and about $15,000 in fees which she had charged to her credit cards and, therefore, had not been paid. Leticia testified she has to sell her house because she has no other means by which to pay her attorney fees.

■ Jeff complains there was no evidence of the hourly rate of any of Leticia's attorneys, the hours they expended on her claim for increased child support, or the reasonableness and necessariness of the fees. Leticia argues the fact that the trial court awarded attorney fees as child support, alone, is sufficient without any evidence to support the award. Contrary to Leticia's contention, the trial court's award of attorney fees as child support does not dispense with the requirement that such fees be supported by evidence. *See, e.g., In re H.S.N.,* 69 S.W.3d 829, 835 (Tex. App.-Corpus Christi 2002, no pet.) (finding no abuse of discretion in award of attorney fees where trial court heard evidence that fees, which were "incurred in relation to the child and are in nature of child support," were reasonable and necessary); *Roosth,* 889 S.W.2d at 456 (holding, after review of evidence, that services performed by appellee's attorneys were related to needs of children); *Daniels,* 811 S.W.2d at 280 (observing that although issues on appeal were whether appellee had pleaded for attorney fees and whether those fees were incurred as "necessaries" for child, evidence supported award of at-

torney fees).[3]

Other than what is contained in her financial information sheet, Leticia presented no evidence concerning attorney fees such as the hourly rate of each attorney, the hours spent on her case by each attorney, or the reasonableness and necessariness of the fees of each attorney who worked on her case. Without any such evidence, the trial court abused its discretion in awarding attorney fees under the Family Code and as necessary support to the children.

### 2. Texas Civil Practice and Remedies Code

The trial court also based its award of attorney fees on Chapter 38 of the Civil Practice and Remedies Code. Jeff asserts the Texas Civil Practice and Remedies Code cannot serve as a proper basis for the award of attorney fees in a suit affecting the parent-child relationship. Section 38.001 sets forth the claims for which a party may recover reasonable attorney fees: (1) rendered services; (2) performed labor; (3) furnished material; (4) freight or express overcharges; (5) lost or damaged freight or express; (6) killed or injured stock; (7) a sworn account; or (8) an oral or written contract. TEX. CIV. PRAC. & REM.CODE ANN. § 38.001 (Vernon 1997). There is a rebuttable presumption that "the usual and customary attorney fees for a claim of the type described in Section 38.001 are reasonable." TEX. CIV. PRAC. & REM.CODE ANN. § 38.003 (Vernon 1997). In the absence of expert testimony, the trial court may take judicial notice of usual and customary attorney fees and the contents of its case file without receiving any further evidence in a proceeding before the court. TEX. CIV. PRAC. & REM.CODE ANN. § 38.004 (Vernon 1997); *Budd v.*

---

**3.** There is no abuse of discretion where an award of attorney fees is supported by the evidence. *See, e.g., Farish v. Farish*, 921 S.W.2d 538, 546 (Tex.App.-Beaumont 1996, no writ) (finding stipulation by appellant's counsel as to appellee's qualifications and reasonableness of hourly fee and appellee's submission to trial court of itemized statements sufficient to support award of attorney fees and, therefore, award was not abuse of discretion); *Thomas v. Thomas*, 895 S.W.2d 895, 898 (Tex.App.-Waco 1995, writ denied) (finding no abuse of discretion in award of attorney fees based on attorney's testimony regarding time spent on motion to modify child support order and hour rate charged); *In re Pecht*, 874 S.W.2d 797, 803–04 (Tex. App.-Texarkana 1994, no pet.) (finding that while evidence was presented that $7,500 would be reasonable and necessary fee for handling appeal, no other evidence was presented showing reasonableness of other amounts awarded for post-trial attorney fees and, therefore, amount of attorney fees would be reduced to $7,500); *Cohen v. Sims*, 830 S.W.2d 285, 290 (Tex.App.-Houston [14th Dist.] 1992, writ denied) (finding award of attorney fees was not abuse of discretion where attorney testified as to usual and customary fees charged in modification action, the hours expended, and hourly rate); *Coke v. Coke*, 802 S.W.2d 270, 278 (Tex.App.-Dallas 1990, writ denied) (finding testimony of attorney's qualifications, number of hours expended, hourly rate, and summary of services sufficient to support award of attorney fees); *MacCallum v. MacCallum*, 801 S.W.2d 579, 587 (Tex.App.-Corpus Christi 1990, writ denied) (finding evidence supporting attorney fees was "specific," including testimony regarding experience and hourly rate, and testimony that services were related to hearing and necessary to case); *Anderson v. Anderson*, 770 S.W.2d 92, 97 (Tex.App.-Dallas 1989, no writ) (finding no abuse of discretion where evidence supported reasonableness of attorney fees); *Power v. Power*, 720 S.W.2d 683, 685 (Tex.App.-Houston [1st Dist.] 1986, writ dism'd) (finding evidence of hours spent on case, hourly fee, and that hourly fee was reasonable supported award of attorney fees); *Laviage v. Laviage*, 647 S.W.2d 758, 761 (Tex. App.-Tyler 1983, no writ) (finding evidence of counsel's hourly rate, credentials, and expertise in family law, and records kept, prepared, and processed, supported award of attorney fees and, therefore, trial court did not abuse discretion in awarding attorney fees).

*Gay,* 846 S.W.2d 521, 524 (Tex.App.-Houston [14th Dist.] 1993, no writ).

The First Court of Appeals has addressed this issue. *Valdez v. Valdez,* 930 S.W.2d 725 (Tex.App.-Houston [1st Dist.] 1996, no writ). *Valdez* involved a suit to modify the parent-child relationship in which the father was awarded attorney fees. *Id.* at 727. The father argued on appeal that the award of attorney fees should be affirmed based on Section 38.004 of the Texas Civil Practice and Remedies Code, which allows the trial court to take judicial notice of usual and customary attorney fees. *Id.* at 732. The court of appeals rejected that argument and, instead, held section 38.004 did not permit the trial court to take judicial notice of the *reasonableness* of attorney fees. *Id.*

The *Valdez* court observed that section 38.003 establishes a presumption that " 'the usual and customary attorney's fees for a claim of the type described in Section 38.001 are reasonable.' " *Id.* (quoting TEX. CIV. PRAC. & REM.CODE ANN. § 38.003). An action to modify the parent-child relationship, however, is not the type of claim that falls within section 38.001. *Id.* Section 38.004 does not address the reasonableness of attorney fees, only "unusual and customary" attorney fees. *Id.* The *Valdez* court concluded, therefore, that because section 38.004 does not address the reasonableness of attorney fees, it cannot support the trial court's decision to take judicial notice of the reasonableness of the amount of attorney fees and section 38.003 cannot be used in any action not listed in section 38.001. *Id.* at 733 (citing *Richards v.*

*Mena,* 907 S.W.2d 566, 573 (Tex.App.-Corpus Christi 1995, writ dism'd by agr.)) (holding section 38.004 cannot be used to justify reasonableness of attorney fees and section 38.003 cannot be used outside of 38.001 action); *see also Lesikar v. Rappeport,* 33 S.W.3d 282, 307 (Tex.App.-Texarkana 2000, pet. denied) (finding because plaintiff's action was not one of those included in section 38.001, plaintiff could not benefit from any presumption allowed by statute); *Gorman v. Gorman,* 966 S.W.2d 858, 866 (Tex.App.-Houston [1st Dist.] 1998, pet. denied) (stating trial court may only take judicial notice of reasonable and necessary attorney fees in claims described in section 38.001).[4]

Leticia argues that "when attorney fees are based upon a written contract as in this case the court can also take judicial notice of the fees incurred." Leticia has cited no authority to support the proposition that an action to increase child support is an action on a written contract. Leticia is not entitled to a presumption of reasonableness under section 38.003 because this is not an action listed under section 38.001. While section 38.004 permits the trial court to take judicial notice of usual and customary fees and the contents of its file without receiving further evidence on the issue, it does not allow the trial court to take judicial notice of the reasonableness of attorney fees. Because Chapter 38 does not provide a basis for the trial court's award of attorney fees to Leticia, the trial court abused its discretion in awarding attorney fees on the basis of

4. Two other courts of appeals, however, have applied sections 38.003 and 38.004 in determining the reasonableness of attorney fees to claims not listed in section 38.001. *See Matelski v. Matelski,* 840 S.W.2d 124, 130 (Tex. App.-Fort Worth 1992, no writ) (involving action to enforce and clarify divorce decree); *In*

*re Estate of Kidd,* 812 S.W.2d 356, 359 (Tex. App.-Amarillo 1991, writ denied) (involving sanction in will contest). The *Valdez* court observed that the claims in *Matelski* and *Kidd* did not involve claims found in section 38.001. *Valdez,* 930 S.W.2d at 732.

judicial notice.[5] Jeff's first through twelfth issues are sustained.

## IV. LETICIA'S APPEAL

### A. Jeff's Possession of Children

In her first issue, Leticia claims the trial court abused its discretion in awarding Jeff more periods of possession when she was awarded the right to establish the primary residence of the children. Leticia complains that awarding Jeff more periods of possession renders her right to establish the primary residence of the children meaningless. The trial court may modify a possession order if (1) the circumstances of the child or the person affected by the order have materially and substantially changed since the rendition of the order, or (2) it has become unworkable or inappropriate under existing circumstances.[6]

■■■ "Joint managing conservatorship does not require the award of equal or nearly equal periods of physical possession of and access to the child to each of the joint conservators." TEX. FAM.CODE ANN. § 153.135 (Vernon 1996); *see also Norris v. Norris*, 56 S.W.3d 333, 344 (Tex.App.-El Paso 2001, no pet.) (stating public policy does not mandate children live with each parent 50 percent of time). Under the joint conservator scheme, both conservators share joint responsibility for the child. *Dennis v. Smith*, 962 S.W.2d 67, 69 (Tex. App.-Houston [1st Dist.] 1997, no pet.).

Jeff testified that during the week following a weekend when he did not have possession of the children, he has them from Monday when they are let out of school until the following Wednesday morning when they are returned to school, and during the week following a weekend when he has had possession, he has them from Wednesday when they are let out of school until Friday morning. Jeff has the children the first, third, and fifth weekends of the month and for 30 days in the summer.

Leticia testified that Jeff's actual possession of and access to the children has exceeded the standard possession order as set forth in the divorce decree. The trial court made the same finding and further found that modification of the schedule would comport with possession actually exercised by Jeff. Jeff's expert recommended there be no adjustment to the schedule that reduces the amount of time the children spend with Jeff. Leticia testified she had no intention of decreasing the amount of time the children spent with Jeff.

■■■ Leticia has failed to challenge any of the trial court's findings of fact with regard to Jeff's periods of possession of the children. Unchallenged findings of fact are binding on the court of appeals "unless the contrary is established as a matter of law, or if there is no evidence to support the finding." *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696 (Tex.1986). There is no mandate that Leticia and Jeff have an equal amount of possession. *See* TEX. FAM.CODE ANN. § 153.135; *Norris*, 56 S.W.3d at 344. The modification of the order merely comports with the periods of

---

5. In any event, even if Leticia had asserted claim for which she could recover attorney fees under section 38.001, she would have to prevail on that claim to be entitled to attorney fees. *See Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 390 (Tex.1997). Because of our disposition of the portion of the order increasing the amount of monthly child, Leticia has not prevailed on her claim.

6. Act of June 19, 1999, 76th Leg., R.S., ch. 1390, § 15, 1999 Tex. Gen. Laws 4700, *repealed by* Act of June 16, 2001, 77th Leg., R.S., ch. 1289, § 12, 2001 Tex. Gen. Laws 3111. Former Section 156.301 of the Family Code was still in effect at the time at the time Jeff sought modification of the order and, therefore, is applicable.

possession already being exercised by Jeff. Because the evidence supports the trial court's modification of the possession schedule, the trial court did not abuse its discretion in awarding Jeff more access to and possession of the children. Leticia's first issue is overruled.

### B. Education Decisions

In her second issue, Leticia claims the trial court abused its discretion in granting Jeff the exclusive right to make education decisions for the children when she was awarded the right to establish the primary physical residence of the children. Leticia argues that by awarding Jeff the exclusive right to make education decisions, the trial court has negated her right to establish the primary residence of the children.

When appointing both parents as joint conservators, the Family Code requires the trial court to "specify the rights and duties of each parent regarding the child's physical care, support, and education." Tex. Fam.Code Ann. § 153.134(b)(2) (Vernon Supp.2002). There is no limitation on the manner in which the court may assign those rights. *Bailey v. Bailey,* 987 S.W.2d 206, 210 (Tex. App.-Amarillo 1999, no pet.); *see also Jenkins v. Jenkins,* 16 S.W.3d 473, 483 (Tex. App.-El Paso 2000, no pet.) (observing list of rights and duties is not exclusive and does not define manner in which trial court assigns or implements rights and duties). Therefore, the trial court retains broad discretion in crafting the rights and duties of each conservator in effectuating the best interest of the child. *Jenkins,* 16 S.W.3d at 483.

Both children attend the elementary school in their neighborhood. Jeff made arrangements for the children to attend their current school, enrolled the older child in the gifted and talented program at school, bought the children's uniforms, and took the children to, and picked them up from, school on the first day. Jeff testified as to which middle school and high school he wants the children to attend and further stated he is willing to consider the children attending private school if necessary.

On the first day of school, Leticia was returning from vacation. Leticia explained that when she made her vacation plans, she did not know when the children's school started and did not attempt to find out. Leticia did not make arrangements for the children to attend their current school. With regard to enrolling the older child in the gifted and talented program at school, she had never inquired about the program. Leticia did not buy the children uniforms or supplies before she left on vacation. Leticia also did not attend a school-sponsored ice cream social for students and parents. When questioned about the possibility of moving outside of Harris County, Leticia stated she had not looked into where the children would attend school.

Again, Leticia has not challenged any of the trial court's findings of fact with regard to Jeff's right to make education decisions for the children. Unchallenged findings of fact are binding on this court unless the contrary is established as a matter of law or there is no evidence to support the trial court's finding. *McGalliard,* 722 S.W.2d at 696. The evidence supports the trial court's award to Jeff of the exclusive right to make education decisions for the children and, therefore, the trial court did not abuse its discretion. Leticia's second issue is overruled.

### C. Domicile Restriction

In her third issue, Leticia claims the trial court abused its discretion in restricting the children's primary residence

to Harris County. The divorce decree provided the children's primary residence was restricted to, and the parties were enjoined from removing the children from, "Houston, Harris County, Texas" for the purpose of changing their primary residence until January 1, 2000, "provided that domicile will remain within a two hundred (200) mile radius of Houston, Harris County, Texas." In addition to seeking the sole right to establish the children's residence, Jeff, in the alternative, sought the continuation of the residency restriction, which was to expire on December 31, 1999. Leticia sought the removal of the 200 mile radius residency restriction. The jury was asked to determine whether the children's primary residence should be "without regard to geographic location" or restricted to "Harris County and any contiguous counties." The jury found that primary residence of the children should be restricted to "Harris County and any contiguous counties."

Although the trial court stated in its rendition on post judgment motion to modify that it adopted the jury's verdict, it nonetheless further stated "Domicile is restricted to Harris County." Similarly, in its modified order, the trial court restricted the children's primary residence to Harris County, Texas.

The Family Code states the following with regard to residential restrictions:

(b) In rendering an order appointing joint managing conservators, the court shall:

(1) designate the conservator who has the exclusive right to determine the primary residence of the child and:

(A) establish, until modified by further order, a geographic area consisting of the county in which the child is to reside *and any contiguous county* thereto within which the conservator shall maintain the child's primary residence.

TEX. FAM.CODE ANN. § 153.134(b)(1)(A) (Vernon Supp.2002) (emphasis added).

Leticia argues the restriction imposed by the trial court is not authorized by section 153.134(b)(1)(A), which provides for a restriction to one county plus any contiguous counties, not to only one county. A review of the record reflects that Leticia did not raise this complaint in the trial court either orally or in writing. Therefore, Leticia has waived this issue on appeal. TEX.R.APP. P. 33.1. Leticia's third issue is overruled.

## V. CONCLUSION

Because the trial court abused its discretion in increasing Jeff's monthly child support obligation and in awarding attorney fees to Leticia, that portion of the judgment is reversed and judgment is rendered that Leticia take nothing on her claim for increased child support and attorney fees. The remainder of the judgment is affirmed. The judgment of trial court is accordingly affirmed, in part, and reversed and rendered, in part.

FOWLER, J., concurs.

WANDA McKEE FOWLER, Justice, concurring.

I concur fully in the court's opinion and write separately only to differ with the analysis used in the majority opinion to resolve whether chapter 38 of the Texas Civil Practice and Remedies Code can be used in this family case to support attorney's fees.

"Statutory provisions for the recovery of attorney's fees are in derogation of the common law, are penal in nature and must be strictly construed." *Knebel v. Capital Nat. Bank*, 518 S.W.2d 795, 804 (Tex.1974). Consequently, attorneys fees are not recoverable unless provided for by statute or by contract between the parties. *Dallas*

*Cent. Appraisal Dist. v. Seven Inv. Co.,* 835 S.W.2d 75, 77 (Tex.1992).

Here, the Family Code specifically provided for attorneys fees because this was a suit affecting the parent-child relationship. TEX. FAM.CODE ANN. § 106.002. But, even though this statute was available to Leticia London, we held that she was not able to recover any fees because—other than the total amounts charged—she did not present any evidence regarding the hourly rate and the total amount of hours spent by the lawyers or regarding the reasonableness and necessity of the fees.

Leticia also claimed that she was entitled to rely on the provisions of chapter 38 of the Civil Practice and Remedies Code to recover fees. That chapter provides for recovery of attorneys fees in eight types of claims. A family dispute is not one of the enumerated claims.[1] TEX. CIV. PRAC. & REM. CODE ANN. § 38.001. For three reasons I believe this chapter was not available to Leticia to recover fees. First, a family law dispute is not one of the listed claims. Second, when read as a whole, it is clear that the sections in the chapter are intended to be read together and are intended to apply only to that chapter. Nothing in the chapter indicates in any way that one or more of its subsections may be used with attorneys fees provisions contained in unrelated codes. Third, reading the chapter in this restrictive manner is consistent with the way Texas courts have read attorneys fee provisions. Thus, chapter 38 was not available to Leticia.

Because provisions for attorneys fees are to be strictly construed, I believe Leticia was limited to the attorneys fee provision in the Family Code. She had one

chance to recover attorneys fees, and that was through the Family Code provisions. Consequently, I would have held simply—as Jeffrey London requested—that chapter 38 of the Civil Practice and Remedies Code does not apply to a modification suit involving the parent-child relationship, and that none of its sections are available to Leticia London to support an award of fees. *See* TEX. CIV. PAC. & REM.CODE ANN. § 38.001–38.006.

---

1. Leticia argues that her contract with her lawyer supports the application of chapter 38, but that contract is not the "claim" involved in the case—changes in child support, conservatorship, parental rights and duties, and residency restrictions were the claims. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 38.001 (chapter 38 applies to eight enumerated types of "claims")