COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

                                        NO.
2-05-240-CV

 

 

IN THE INTEREST OF M.K.R., A MINOR CHILD                                          

                                                                                                        

                                              ------------

 

           FROM
THE 324TH DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

I.  Introduction

In five issues, appellant
Charles Roberts complains of the trial court=s judgment against him awarding $29,604.49 in child support arrearages
and interest to his ex-wife.  Because we
hold that the trial court abused its discretion by entering an arrearage
judgment against Roberts that included amounts barred by res judicata, we
reverse and remand.

II. Background








This is the case of the
two-bite arrearage.  In March 1985,
Roberts and appellee Mary Ann Sanderson were divorced, and Roberts was ordered
to pay Sanderson $250 per month in child support for their son, M.K.R., until
he reached his eighteenth birthday or became otherwise emancipated.  The divorce decree specified that this child
support was to be paid each month in two equal installments of $125 each, due
on the 4th and 19th days of each month. 
Sanderson soon thereafter requested that Roberts pay her directly, and
not through the child support office in Denton County, because she had moved to
Tarrant County and was experiencing delays in receiving the payments from the
Denton County office.  In February 1991,
Roberts was laid off from his job and did not return to work until September
1992; he reported less than $6000 in income for each of those two years.

A.     The First Payment Dispute








On November 12, 1993,
Sanderson filed a single document titled AMotion to Transfer Venue, Motion for Contempt, and Motion to Modify
Prior Order of the Court.@  In the motion for contempt portion of the
document, Sanderson alleged that Roberts had failed to make child support
payments from January 4, 1991, to October 4, 1993.  On June 15, 1994, the associate judge made a
recommendation regarding this motion in a AReport for Contempt,@ which was signed by the parties, their attorneys, and the associate
judge; the report also contained the stamped signature of the district judge
under the words AAPPROVED AND
SO ORDERED.@  The report grants an arrearage judgment to
Sanderson for $5,825 and orders Roberts to make payments of $200 per month on
this arrearage judgment in addition to his $250-per-month child support
payments.  The report also sentences
Roberts to thirty days in jail for contempt but suspends the sentence for five
years or until the arrearage judgment is paid, whichever comes first.  The record shows no further proceedings in
this matter,[1]
and according to the docket sheet, the remainder of the pleading was dismissed
for want of prosecution on July 25, 1995.

B.     The Second Payment Dispute








Almost six years later, on
June 1, 2001, Roberts filed a motion to modify, seeking custody of M.K.R. and
modification of his child support obligations. 
Sanderson responded, in part, by filing a motion for enforcement on
August 9, 2002, asserting that Roberts had failed to pay almost all child
support payments due from September 1984 through June 1994, as well as other,
intermittent payments from December 1996 through July 2002.  Sanderson amended her motion for enforcement
to request an arrearage judgment of $61,624.70, interest on the arrearage
amounting to $36,132.89, costs, and attorney=s fees.  The court eventually
entered an order on April 7, 2005, finding that the arrearage owed by Roberts
was $29,604.49 Afor the
period January 4, 1985 through December 5, 2002, which includes accrued
interest.@ The court
also assessed attorney=s fees
against Roberts in the amount of $6,720. 
The trial court=s November
16, 2005 Findings of Fact and Conclusions of Law, as well as its January 12,
2006 Additional Findings of Fact and Conclusions of Law, shed little light on
how this number was calculated, which payments were made or missed, or how
interest was calculated.  Roberts now
appeals.

III. Standard of Review

Issues regarding the payment of child support, including
confirmation of child support arrearages as well as payment of attorney=s fees, are
reviewed under an abuse of discretion standard. 
Worford v. Stamper, 801 S.W.2d 108, 109 (Tex. 1990).  Legal and factual sufficiency are factors
that can be considered in determining whether an abuse of discretion has
occurred.  London v. London, 94
S.W.3d 139, 143S44 (Tex. App.CHouston [14th
Dist.] 2002, no pet.).  A trial court abuses its discretion if it
acts without reference to any guiding rules or principles; in other words, if
it acts arbitrarily or unreasonably.  Worford,
801 S.W.2d at 109. 








Findings of fact entered in a case tried to the court have
the same force and dignity as a jury=s answers to jury
questions.  Anderson v. City of Seven
Points, 806 S.W.2d 791, 794 (Tex. 1991). 
The trial court=s findings of fact are reviewable for
legal and factual sufficiency of the evidence to support them by the same
standards that are applied in reviewing evidence supporting a jury=s answer.  Ortiz v. Jones, 917 S.W.2d 770, 772
(Tex. 1996); Catalina v. Blasdel, 881 S.W.2d 295, 297 (Tex. 1994).  Conclusions of law may not be
challenged for factual sufficiency, but they may be reviewed to determine their
correctness based upon the facts.  Dominey
v. Unknown Heirs and Legal Representatives of Lokomski, 172 S.W.3d 67, 71
(Tex. App.CFort Worth
2005, no pet.); Rogers v. City of Fort Worth, 89 S.W.3d 265, 277 (Tex.
App.CFort Worth 2002, no pet.).

A legal sufficiency challenge may be sustained only when
(1) the record discloses a complete absence of evidence of a vital fact, (2)
the court is barred by rules of law or of evidence from giving weight to the
only evidence offered to prove a vital fact, (3) the evidence offered to prove
a vital fact is no more than a mere scintilla, or (4) the evidence establishes
conclusively the opposite of a vital fact. 
Uniroyal Goodrich Tire Co. v. Martinez, 977 S.W.2d 328, 334 (Tex.
1998), cert. denied, 526 U.S. 1040 (1999);
Robert W. Calvert, "No Evidence" and "Insufficient
Evidence" Points of Error, 38 TEX. L. REV. 361, 362S63 (1960).  In determining whether there is legally
sufficient evidence to support the finding under review, we must consider
evidence favorable to the finding if a reasonable fact-finder could, and
disregard evidence contrary to the finding unless a reasonable fact-finder
could not.  City of Keller v. Wilson,
168 S.W.3d 802, 827 (Tex. 2005). 








An assertion that the evidence is factually insufficient to
support a fact finding means that the evidence supporting the finding is so
weak or the evidence to the contrary is so overwhelming that the answer should
be set aside and a new trial ordered.  Garza
v. Alviar, 395 S.W.2d 821, 823 (Tex. 1965). 
We are required to consider all of the evidence in the case in making
this determination, not just the evidence that supports the finding.  Mar. Overseas Corp. v. Ellis, 971
S.W.2d 402, 406S07 (Tex.), cert. denied, 525 U.S.
1017 (1998).

IV. Res Judicata

In his first issue, Roberts
asserts that the portion of Sanderson=s claim for child support arrearage representing amounts incurred
prior to the June 15, 1994 Report for Contempt is barred by res judicata.

A.     The Doctrine of Res
Judicata

Broadly speaking, res judicata is the generic
term for a group of related concepts concerning the conclusive effects given
final judgments.  Puga v. Donna Fruit
Co., 634 S.W.2d 677, 679 (Tex. 1982). 
Within this general doctrine, there are two principal categories: (1)
claim preclusion (also known as res judicata); and (2) issue preclusion (also
known as collateral estoppel).  Res
judicata, or claims [sic] preclusion, prevents the relitigation of a claim or
cause of action that has been finally adjudicated, as well as related matters
that, with the use of diligence, should have been litigated in the prior
suit.  Gracia v. RC Cola-7-Up Bottling
Co., 667 S.W.2d 517, 519 (Tex. 1984); Bonniwell v. Beech Aircraft Corp.,
663 S.W.2d 816, 818 (Tex. 1984).  Issue
preclusion, or collateral estoppel, prevents relitigation of particular issues
already resolved in a prior suit.

 








Barr v. Resolution Trust Corp., 837 S.W.2d 627, 628 (Tex. 1992) (footnote omitted).  Res judicata prevents splitting of lawsuits
and reflects a policy to bring all litigation on a matter to an end, prevent
vexatious litigation, maintain stability of court decisions, promote judicial
economy, and prevent double recovery.  Id.
at 629.

Res judicata requires proof
of the following elements: (1) a prior final judgment on the merits by a court
of competent jurisdiction, (2) identity of parties or those in privity with
them, and (3) a second action based on the same claims as were raised or could
have been raised in the first action.  Amstadt
v. U.S. Brass Corp., 919 S.W.2d 644, 652 (Tex. 1996).  Identity of parties is present here; the
parties are the former spouses in both the 1993 and 2001 proceedings.  Furthermore, Sanderson obviously could have
claimed in the 1993 enforcement action any and all missed payments from the
time of the institution of divorce proceedings in 1984 up to the time of the
1993 filing, including many of those that she asserted for the first time in
the later 2001 enforcement action. 
Accordingly, the second two factors have been met in this appeal, and it
is the first factor concerning finality of the judgment that warrants
discussion.

B.     The Finality of the Prior
Judgment








An examination of Sanderson=s 1994 filing, styled AMotion to Transfer Venue, Motion for Contempt, and Motion to Modify
Prior Order of the Court,@ reveals
that it is composed of three distinct pleadings in one document.  The motion for contempt portion of the
document sets forth specifically alleged missed payments by Roberts for 1991
through 1993 and is written in such a way as to convey that the enumerated
missed payments, totaling $5,325, are the only payments that had been missed up
to the date of filing pursuant to the March 6, 1985 Decree of Divorce.[2]

The Report for Contempt
grants an Aarrearage
judgment,@ was signed
by the parties, signed by their attorneys, Aso ordered@ and signed
by the associate judge, and Aapproved and so ordered@ and signed with the stamp of the district judge.[3]  Under the law applicable at the time the
report was signed, the findings and recommendations of the associate judge
became the order of the referring court only on the referring court=s signing an order conforming to the report.   See Act of June 1, 1987, 70th Leg.,
R.S., ch. 674, ' 3.02, sec.
54.013, 1987 Tex. Gen. Laws 2507, 2520; repealed by Act of April 6,
1995, 74th Leg., R.S., ch. 20, ' 2(3), 1995 Tex. Gen. Laws 113, 282. 
The trial court made the following conclusions regarding this report:

21.   The Report for Contempt was never adopted by the Trial Court by
separate interim order or final order.








. . .
.

 

24.   The Report for Contempt was not a final order.

 

25.   As a result of the dismissal of the litigation on July 25, 1995,
the Report for Contempt was rendered a nullity, and the Decree of Divorce
remained in full force and effect.

 

26.   The doctrine of Res Judicata is inapplicable to the Report for
Contempt.

 

Roberts contends that the
trial court abused its discretion by concluding that the Report for Contempt
was not a final order and that res judicata did not apply to Sanderson=s claim.  We agree.  Pursuant to the statutory requirements, the
Report for Contempt became an order of the referring court when the referring
court adopted the recommendation of the associate judge and signed the Report
for Contempt under the notation AAPPROVED AND SO ORDERED.@  See id.[4]
 








Sanderson argues that the
report could not be a final order, despite the trial court=s approval and signature, because the family code contemplates that
the order is a separate document beyond the associate judge=s report.  See Tex. Fam. Code Ann. ' 201.007(a)(10) (Vernon Supp. 2006) (providing that an associate judge
may Arecommend an order to be rendered in a case@); In re Lausch, 177 S.W.3d 144, 151 (Tex. App.CHouston [1st Dist.] 2005, orig. proceeding) (holding that associate
judge=s report was not final because it required approval of the trial court
and Acontemplate[d] an order to follow@).  However, Sanderson refers us
to nothing in the family code or the government code that specifically requires
a separate document per se; instead, what is required is the separate approval
of the district court shown by the district court=s signing an order conforming to the report.  See Act of June 1, 1987, 70th Leg.,
R.S., ch. 674, ' 3.02, sec.
54.013, 1987 Tex. Gen. Laws 2507, 2520 (repealed 1995).  Here, it is evident on the face of the report
that the district court judge approved and signed the associate judge=s report as the order of the court; the signature of the district
court judge appears on the report under the words AAPPROVED AND SO ORDERED.@  Nothing in this document
states that an additional order will follow.[5]













In addition, Sanderson argues
that the report did not qualify as an enforcement order because it did not
comply with the family code=s specificity requirements for enforcement orders.  See Act of May 25, 1993, 73rd Leg.,
R.S., ch. 798, ' 13, 1993
Tex. Gen. Laws 3169, 3174, repealed by Act of April 6, 1995, 74th Leg.,
R.S., ch. 20, ' 2(1), 1995
Tex. Gen. Laws 113, 282.[6]  The purpose of the specificity requirements
is to notify the offender of how he has violated the provisions of the relevant
order and how he can purge himself of contempt, to notify the sheriff so that
he can carry out enforcement, and to provide sufficient information for an
adequate review.  See In re Levingston,
996 S.W.2d 936, 938 (Tex. App.CHouston [14th Dist.] 1999, orig. proceeding).  Accordingly, while the lack of specificity
may have been grounds for Roberts, as the losing party, to complain about the
order=s validity, Sanderson does not have standing to complain about the
lack of specificity in the enforcement order. 
She was not personally aggrieved by the lack of specificity in the
order, and any violation of due process resulting from the lack of specificity
would affect Roberts=s rights,
not Sanderson=s.  See Nootsie, Ltd. v. Williamson County Appraisal
Dist., 925 S.W.2d 659, 661 (Tex. 1996) (AA [party] has standing when it is personally aggrieved.@); Brunson v. Woolsey, 63 S.W.3d 583, 587 (Tex. App.CFort Worth 2001, no pet.) (AWithout a breach of a legal right belonging to a plaintiff, that
plaintiff has no standing to litigate.@).








Contrary to the trial court=s conclusion, the Report for Contempt was not rendered a nullity upon
the trial court=s dismissal
of the remainder of Sanderson=s action for want of prosecution on July 25, 1995.  As stated above, Sanderson filed three
motions in one document: a motion to transfer venue, a motion for contempt
(that also requested an arrearage judgment), and a motion to modify.  The trial court ruled on both the motion to
transfer venue and the motion for contempt, but the record shows no further
action taken on Sanderson=s remaining
motion to modify.  Therefore, the trial
court=s dismissal for want of prosecution operated to extinguish the motion
to modifyCthe only
motion then pending before the court.  It
did not nullify the prior Report for Contempt, which was approved and signed as
an order of the court a year earlier, because that report was a final order
reducing Roberts=s unpaid
child support to judgment.  See
Act of May 25, 1993, 73rd Leg., R.S., ch. 798, ' 14, sec. 14.41(a), 1993 Tex. Gen. Laws 3169, 3174, repealed by
Act of April 6, 1995, 74th Leg., R.S., ch. 20, ' 2(1), 1995 Tex. Gen. Laws 113, 282 (providing that A[a] periodic child support payment not timely made shall constitute a
final judgment for the amount due and owing, including interest@); Beck v. Walker, 154 S.W.3d 895, 903 (Tex. App.CDallas 2005, no pet.) (stating that the current version of this
statute provides for the reduction of unpaid child support to judgment).[7]








We reject Sanderson=s final argument that applying the res judicata doctrine to arrearage
judgments would thwart the legislature=s intent, as shown in section 157.005 of the family code, to serve the
best interests of the child by granting large allowances for collection of
unpaid child support.  See Tex. Fam. Code Ann. ' 157.005(b) (Vernon Supp. 2006) (providing that the trial court
retains jurisdiction to render judgment for past‑due child support for
ten years after the support obligation terminates).  While this statute does provide an extended
limitations period for confirming child support arrearages, nothing in the
statute permits multiple enforcement actions and repeated litigation covering
the same time period of missed payments. 
As with other final, unappealed judgments that are regular upon their
face, res judicata applies to arrearage judgments.  In re Nichols, 51 S.W.3d 303, 307
(Tex. App.CSan Antonio
2000, no pet.) (citing Berry v. Berry, 786 S.W.2d 672, 673 (Tex.
1990)).  Sanderson has provided us with
no authority for disregarding principles of res judicata to allow her a second
bite at the apple for claims that she could have asserted at least eight years
earlier.  

By its terms, the Report for
Contempt was a judgment on the amount of unpaid child support owed by Roberts
as of June 15, 1994.  It became a final
order of the district court when the district court adopted the recommendation
of the associate judge and signed the Report for Contempt under the notation AAPPROVED AND SO ORDERED.@  Sanderson has cited no reason
why she could not or should not have asserted her claims of missed payments
from September 1984 through June 1994 in her original motion for contempt.  We hold that the trial court abused its
discretion by concluding that res judicata did not apply to the portion of
Sanderson=s claim for
child support arrearage representing amounts incurred prior to the Report for
Contempt and sustain Roberts=s first issue.[8]

V. Abuse of Discretion in
Arrearage Calculations








In his fourth issue, Roberts
asserts that the trial court abused its discretion by entering an arrearage
judgment against him that was not supported by sufficient evidence.  The trial court found Roberts in arrears in
the amount of $29,604.49, including accrued interest at six percent per annum,
for the period January 4, 1985 through December 5, 2002.  None of the court=s findings of fact or conclusions of law reveals how this amount was
calculated beyond the following explanation:

[T]he
Court finds that the number of payments made of $250 per month as ordered in
the 1985 decree of divorce, the credit for the periods in which Mr. Roberts had
possession of the minor and the amounts set forth in the Tarrant County Child
Support Office record of payment including interest computed at the rate of 6%
per annum was $29,604.49.

 

We have concluded that res
judicata applied to all amounts of past due child support prior to the June 15,
1994 Report for Contempt.  Accordingly,
we hold that the trial court abused its discretion by entering an arrearage
judgment against Roberts that included any amounts barred by res judicata.  See Worford, 801 S.W.2d at 109; London,
94 S.W.3d at 143S44.  We sustain Roberts=s fourth issue.

VI. Attorney=s Fees








In his fifth issue, Roberts
requests the court to reverse and render a take-nothing judgment against
Sanderson but remand to the trial court to consider Roberts=s request for attorney=s fees.  The Tarrant County
child support payment history admitted into evidence at the hearing on
Sanderson=s motion
reveals that, between June 15, 1994 and December 5, 2002, Roberts missed
sixteen-and-a-half months= worth of
regular monthly child support payments totaling $4,125.00, but in the same time
frame he actually made other lump sum and weekly payments totaling $5,205.02.[9]  The copy of the Tarrant County child support
payment history admitted at the hearing is evidence of the facts asserted in
the payment record and is admissible to show whether payments were made.  See Tex.
Fam. Code Ann. ' 157.162
(Vernon 2002).  Neither Sanderson nor
Roberts disputes the payment history=s record of his post-1994 payments.  
However, this payment history also reveals that Roberts was late with
some installments of his child support obligationsCsome payments were not made until after the appropriate due dates (the
4th and 19th days of each month).








Because interest can accrue
on late payments as well as missed payments, the trial court still must
determine whether Sanderson is entitled to interest on any post-June 15, 1994
payments that Roberts paid late or missed, even if he had caught up on his
delinquent child support payments by the date of the trial court=s judgment.  See Tex. Fam. Code Ann. ' 157.265(a) (Vernon Supp. 2006) (providing that interest may accrue on
delinquent child support from the date the support is delinquent until the date
the support is paid or the arrearages are confirmed and reduced to
judgment).  Further, the trial court may
order Roberts to pay Sanderson=s attorney=s fees if it
finds that he failed to make child support payments when due.  See id. ' 157.167(a).  This is true even
if Roberts had paid off any child support arrearage by the time of the hearing
on Sanderson=s motion for
enforcement.  See Ex parte Boyle,
545 S.W.2d 25, 27 (Tex. Civ. App.CHouston [1st Dist.] 1977, orig. proceeding) (upholding attorney=s fees award against father, who had paid off his child support
arrearage by the time of the enforcement hearing, because he had been in
default when served with notice of the hearing, and merely paying off the
arrearage did not correct his prior failures to comply with the payment
deadlines specified in the divorce decree). 
We overrule Roberts=s fifth issue to the extent that it requests us to reverse and render
a take-nothing judgment against Sanderson.[10] 

 








 

VII.  Conclusion

Having concluded that the
trial court abused its discretion by failing to apply res judicata to Sanderson=s claims of missed child support payments that were due before June
15, 1994, and by entering an arrearage judgment against Roberts that included
amounts from claims barred by res judicata, we reverse the judgment of the
trial court and remand for further proceedings.

 

BOB MCCOY

JUSTICE

 

 

PANEL B:   HOLMAN, WALKER, and MCCOY, JJ.

 

WALKER,
J. concurs without opinion.

 

DELIVERED:
January 25, 2007

 











[1]The trial court had previously
granted Sanderson=s motion to transfer venue to
Tarrant County on January 7, 1994.





[2]In this motion, Sanderson created a
chart of payments due, the amount paid, and a running arrearage total for the
years 1991, 1992, and 1993.  She prefaced
this table with the statement, ARespondent has failed to make
child support payments in the amounts and on the dates required by the order as
shown:@  Nothing in the motion indicates that this is
an incomplete list or that Roberts had committed other violations of the
divorce decree that
Sanderson had chosen not to include in her motion for contempt.





[3]The use of a judge=s stamped signature is permissible
and valid.  See In re
Barber, 982 S.W.2d 364, 367 (Tex. 1998) (orig. proceeding) (A[A]
judge may sign a document by directing another person who is under the judge=s
immediate authority to affix the judge=s signature using a rubber
stamp.@).





[4]Sanderson complains that there is
no docket entry indicating the existence of a final order prior to the trial
court=s dismissal order.  However, the mere absence of a docket entry
regarding the approval of the Report for Contempt does not operate to
invalidate the trial court=s approval of the Report for Contempt as an order of the
court.  See Guyot v. Guyot,
3 S.W.3d 243, 246B48 (Tex. App.CFort Worth 1999, no pet.)
(recognizing that docket entries form no part of the record that may be
considered on appeal because they are inherently unreliable).





[5]Sanderson
also contends that the report was not a final order, despite the district court=s
approval and signature, because the signature was merely placed on the report
pursuant to Acommon
practice in Tarrant County Associate Courts . . . for the sake of preserving
the Associate Judge=s
recommendation pending the preparation and entry of a typed order generally
based upon the appropriate form recommended by the Texas Family Law Practice
Manual.@  Sanderson gives us no authority for this
assertion, and there is no evidence in the record regarding Tarrant County=s Acommon
practice@ in
1994 regarding district judges= signatures on associate
judges=
reports.  





[6]Specifically,
an enforcement order must contain Afindings setting out in
ordinary and concise language the provisions of the final order, decree, or
judgment for which enforcement was sought, the acts or omissions that are the
subject of the order, the manner of noncompliance, and the relief awarded by
the court.@  Id. 
If the enforcement order holds a party in contempt, it must include Afindings
setting out specifically and with particularity or incorporating by reference
the provisions of the final order, decree, or judgment for which enforcement
was sought and the date of each occasion on which the respondent failed to
comply with the provision.@  Id.

 





[7]The language of the former version
is nearly identical to that of the current, which provides that A[a] child support payment not
timely made constitutes a final judgment for the amount due and owing,
including interest.@ 
Tex. Fam. Code Ann. ' 157.261(a) (Vernon 2002).





[8]In light of our disposition of
Roberts=s first issue, we need not reach
his second and third issues, in which he argues that the Report for Contempt is
an enforceable Rule 11 agreement and that Sanderson is estopped from claiming
an amount of past due payments in the 2001 proceeding that is different from
the amount claimed in the 1993 enforcement action for the same time
period.  See Tex. R. App. P. 47.1.





[9]After
June 15, 1994, Roberts made all but one of his $250 per month child support
payments through August 2001.  He then
made a payment of $658.19 in October 2001 but did not make any other payments
until a year later, on October 28, 2002, when he began making weekly payments
of $155.48 through the first week of December 2002 (for a total of six
payments).  In addition, on December 5,
2002, Roberts made two payments in the amounts of $2,250.00 and $1,363.95. 





[10]We do
not address the remainder of the issue, in which Roberts asks the court to remand the case
for consideration of his attorney=s fees, because he provides no discussion or citation to
authority for this request and because he does not point us to anywhere in the
record showing that he requested attorney=s fees from the trial court.  See Hall v. Stephenson, 919
S.W.2d 454, 466B67 (Tex. App.CFort Worth 1996, writ denied)
(holding that an appellate court is not required to search the appellate
record, with no guidance from the briefing party, to determine if the record
supports the party=s argument).