Opinion issued June 26, 2008 





 














In The

Court of Appeals

For The

First District of Texas






NO. 01-07-00480-CV

__________


KAREN MCCRIGHT, Appellant


V.


JOSH RODRIGUEZ, JOHNNIE LUE FISK, INDIVIDUALLY AND AS
EXECUTRIX OF THE ESTATE OF ROBERT ALLEN WHORTON, AND
EMMETT HUFF, Appellees






On Appeal from the 125th District Court

Harris County, Texas

Trial Court Cause No. 2006-56006






MEMORANDUM OPINION

 Appellant, Karen McCright, challenges the trial court's final judgment,
rendered after a bench trial, in favor of appellees, Josh Rodriguez, Johnnie Lue Fisk,
individually and as executrix of the estate of Robert Allen Whorton, and Emmett
Huff, in McCright's suit to "stop interference" with a piece of property over which
she claimed ownership and possession rights, "to set aside [a] deed" in lieu of
foreclosure that she signed regarding that property, and for civil conspiracy. In three
issues, McCright contends that the "statute of limitations expired on the acceleration
of the note" securing her rights to the property, the deed in lieu of foreclosure that she
signed was invalid, and the evidence is legally insufficient to support certain findings
of fact and conclusions of law.

 We affirm. 

Factual and Procedural Background


 In 1995, Karen McCright began renting a piece of property (the "property") in
Houston, Texas from Robert Allen Whorton, and thereafter began operating a
treatment center on that property. In April 1998, McCright purchased the property
from Whorton, signing both a promissory note in the amount of $200,000 payable to
Whorton and a deed of trust identifying Whorton as the beneficiary. Whorton died
in 1999, and William Fisk became the executor of Whorton's estate and the trustee
of a number of trusts which held the property of the estate, including the note signed
by McCright. In December 1999, McCright defaulted on payments under the note. 
On October 5, 2001, Emmett Huff, as the attorney and representative of William Fisk,
sent McCright a letter demanding that McCright "bring the note current
immediately." In the conclusion of the letter, Huff stated that he was presenting
McCright with an "opportunity for amicable resolution." (1)

 In 2005, William Fisk died, and his wife, Johnnie Lue Fisk, became successor
trustee of the trusts holding the property of the Whorton estate. On December 12,
2005, Johnnie Lue Fisk and Huff, among others, met with McCright, and McCright
signed a deed in lieu of foreclosure for the property. The deed in lieu of foreclosure
identified McCright as the grantor and Whorton's estate as the grantee, and Johnnie
Lue Fisk signed the deed in lieu of foreclosure in her capacity as trustee of Whorton's
estate. The property was subsequently put up for sale, and, on August 18, 2006, 
Johnnie Lue Fisk, who had by that date become the executrix of Whorton's estate,
signed a warranty deed selling the property to Rodriguez.

 Despite the sale of the property to Rodriguez, McCright contended that she was
still the owner of the property. McCright asserted that the note had been accelerated
by the October 2001 letter and that the note could no longer be enforced because the
statute of limitations on accelerating the note had expired. McCright also asserted
that the deed in lieu of foreclosure was not accepted by Whorton's estate. McCright
filed suit, and, as reflected by the trial court's judgment, Rodriguez and Johnnie Lue
Fisk filed counterclaims. (2) 

 After conducting a bench trial, the trial court entered its judgment, ordering that
McCright take nothing, Rodriguez recover possession of the property and damages
in the amount of $17,346 plus postjudgment interest and court costs, and Johnnie Lue
Fisk recover damages in the amount of $8,117.09 for delinquent real estate taxes,
$25,000 for her attorney's fees incurred in pursuing breach of contract claims on
behalf of Whorton's estate, and postjudgment interest and court costs. The trial court
subsequently entered findings of fact and conclusions of law.

Limitations

 In her first issue, McCright contends that the "statute of limitations expired on
the acceleration of the note on the deed in trust and[, thus,] the property belonged to
her." Relying on the October 2001 letter and citing section 16.035 of the Texas Civil
Practice and Remedies Code, McCright asserts that "more than four years had passed
since any attempt was made to collect on the note." See Tex. Civ. Prac. & Rem.
Code Ann. § 16.035 (Vernon 2002).

 Although McCright does not refer us to any specific subsection of section
16.035 or explain how any specific subsection applies in the instant case, section
16.035 provides, in relevant part,

(a) A person must bring suit for the recovery of real property under
a real property lien or the foreclosure of a real property lien not
later than four years after the day the cause of action accrues.


(b) A sale of real property under a power of sale in a mortgage or
deed of trust that creates a real property lien must be made not
later than four years after the day the cause of action accrues.


. . . . 


(d) On the expiration of the four-year limitations period, the real
property lien and a power of sale to enforce the real property lien
become void.


(e) If a series of notes or obligations or a note or obligation payable
in installments is secured by a real property lien, the four-year
limitations period does not begin to run until the maturity date of
the last note, obligation, or installment.


. . . . 


Id. 

 In support of her limitations argument, McCright also cites Holy Cross Church
of God in Christ v. Wolf, 44 S.W.3d 562, 566 (Tex. 2001). In Wolf, the Texas
Supreme Court explained that a default on a note or deed that secures real property
and that contains an optional acceleration clause "does not ipso facto start limitations
running on the note," "the action accrues only when the holder actually exercises its
option to accelerate," effective acceleration requires both a notice of intent to
accelerate and a notice of acceleration, and "[b]oth notices must be clear and
unequivocal." Id. The court noted that, "[e]ven when a noteholder has accelerated
a note upon default, the holder can abandon acceleration if the holder continues to
accept payments without exacting any remedies available to it upon declared
maturity." Id. at 566-67.

 Here, the record contains no evidence that, at any time prior to the parties'
execution of the deed in lieu of foreclosure, appellees made any attempts to accelerate
the note or foreclose upon the property. Contrary to McCright's representations, the
October 2001 letter did not demand "the entire amount due," but instead amicably
sought McCright's payments to bring the note current. In fact, McCright continued
to remain on the property until 2005 without receiving any notices of intent to
accelerate or notices of acceleration. Accordingly, we hold that there is no evidence
that the "statute of limitations expired on the acceleration of the note" or that
McCright became the owner of the property.

 We overrule McCright's first issue.

Acceptance of Deed in Lieu of Foreclosure 

 In her second issue, McCright argues that, because the deed in lieu of
foreclosure was never accepted by the executrix of Whorton's estate, it was invalid. 
McCright cites Johnnie Lue Fisk's testimony establishing that her husband, William
Fisk, was the executor of Whorton's estate until his death on July 17, 2005, the deed
in lieu of foreclosure was signed by the parties on December 12, 2005 (after William
Fisk's death), Johnnie Lue Fisk signed the deed in lieu of foreclosure in her capacity
as trustee of the Whorton trusts and not as executor of Whorton's estate, and Johnnie
Lue Fisk qualified to serve as executor of Whorton's estate on February 1, 2006 (after
the execution of the deed in lieu of foreclosure). Based on this testimony, McCright
contends that "the evidence is clear and direct" that "there was no executor or trustee
in place . . . to accept the deed in lieu of foreclosure." (3)

 The record establishes that the deed in lieu of foreclosure was signed and
accepted by Johnnie Lue Fisk in her capacity as successor trustee of Whorton's trusts. 
Moreover, as stated in a finding of fact that is unchallenged on appeal, on July 18,
2006, Johnnie Lue Fisk, in her capacity as successor trustee of Whorton's trusts,
signed a warranty deed conveying the property to Johnnie Lue Fisk as executor of
Whorton's estate and, on August 18, 2006, Whorton's estate sold the property to
Rodriguez. See London v. London, 94 S.W.3d 139, 149 (Tex. App.--Houston [14th
Dist.] 2002, no pet.) ("Unchallenged findings of fact are binding on the court of
appeals 'unless the contrary is established as a matter of law, or if there is no evidence
to support the finding.'" (quoting McGalliard v. Kuhlmann, 722 S.W.2d 694, 696
(Tex. 1986))). Accordingly, we hold that there is no evidence supporting McCright's
contention that the deed in lieu of foreclosure was not accepted and was, thus, invalid.

 We overrule McCright's second issue.

Findings of Fact and Conclusions of Law

 In her third issue, McCright contends that the evidence is legally insufficient
to support the trial court's findings of fact 11, 24, 30, 31, 32, 70, and 71, and
conclusions of law 5, 7, 8, 9, 11, 12, 13, 14, 16, 17, 18, and 19.

 In an appeal of a judgment rendered after a bench trial, the trial court's findings
of fact have the same weight as a jury's verdict, and we review the legal sufficiency
of the evidence used to support them, just as we would review a jury's findings.
Catalina v. Blasdel, 881 S.W.2d 295, 297 (Tex. 1994); Daniel v. Falcon Interest
Realty Corp., 190 S.W.3d 177, 184 (Tex. App.--Houston [1st Dist.] 2005, no pet.).
In conducting a legal sufficiency review of the evidence, a court must consider all of
the evidence in the light most favorable to the verdict and indulge every reasonable
inference that would support it. City of Keller v. Wilson, 168 S.W.3d 802, 822 (Tex.
2005). In determining whether legally sufficient evidence supports the finding under
review, we must consider evidence favorable to the finding if a reasonable fact finder
could consider it, and disregard evidence contrary to the finding unless a reasonable
fact-finder could not disregard it. Id. at 827; Brown v. Brown, 236 S.W.3d 343, 348
(Tex. App.--Houston [1st Dist.] 2007, no pet.).

 In an appeal from a judgment rendered after a bench trial, we review a trial
court's conclusions of law de novo, and we will uphold the conclusions if the
judgment can be sustained on any legal theory supported by the evidence. BMC
Software Belgium, N.V. v. Marchand, 83 S.W.3d 789, 794 (Tex. 2002); In re Moers,
104 S.W.3d 609, 611 (Tex. App.--Houston [1st Dist.] 2003, no pet.). Although a
trial court's conclusions of law may not be challenged for factual sufficiency, we may
review the legal conclusions drawn from the facts to determine whether the
conclusions are correct. BMC Software Belgium, N.V., 83 S.W.3d at 794. If we
determine that a conclusion of law is erroneous, but that the trial court nevertheless
rendered the proper judgment, the error does not require reversal. Id.; Vaughn v. DAP
Fin. Servs., 982 S.W.2d 1, 6 (Tex. App.--Houston [1st Dist.] 1997, no pet.).

 Finally, we note that the trial court acts as fact-finder in a bench trial and is the
sole judge of the credibility of witnesses. See Murff v. Murff, 615 S.W.2d 696, 700
(Tex. 1981); HTS Servs., Inc. v. Hallwood Realty Partners, L.P., 190 S.W.3d 108,
111 (Tex. App.--Houston [1st Dist.] 2005, no pet.).

 The findings of fact challenged by McCright provide,

 11. William Fisk was the Trustee of eight (8) Whorton Family
Decedent Trusts (the "Trusts") at the time of the death of Robert
A. Whorton.


 24. On November 12, 2001 Karen McCright and her attorney met
with William Fisk, Executor, his attorney Emmett S. Huff, and
Norman Snapp, CPA, at the Law Office of Emmett S. Huff. At
the meeting, Karen McCright acknowledged that she was
delinquent in the Note payments and reached an agreement with
William Fisk, Executor of the Estate of Robert A. Whorton, that
if she paid the taxes, maintained the property, and made payments
in an amount equal to the Note payments when she was able to do
so; then, she would be allowed to remain as a tenant-at-will until
the property was sold or she found a place to relocate her
business, whichever occurred first. Karen McCright agreed to
give the Estate a Deed in lieu of foreclosure of the Note and Deed
of Trust liens.


 30. The Deed in Lieu was presented to Karen McCright in Emmett S.
Huff's office at which time Huff told her she could consult an
attorney. The deed was explained to McCright and she was given
the opportunity to consult with an attorney.


 31. Johnnie L. Fisk, Trustee of the Trusts that held the Whorton
Estate property, signed and accepted the Deed in Lieu.


 32. The Deed in Lieu was delivered to an[d] accepted by authorized
representatives of the Trusts and the Estate of Robert A. Whorton.


 70. Intervenor Johnnie L. Fisk, individually and as Executrix of the
Estate of Robert A. Whorton has incurred reasonable and
necessary attorney's fees for representation in having to pursue
the breach of contract claims in this lawsuit in the amount of
$25,000.


 71. Defendant Josh E. Rodriguez has incurred actual damages for loss
of use of the property in the amount of $19,906.60, being $82.60
per day for the 241 days from and including July 18, 2006, the
date Johnnie L. Fisk as Executrix of the Estate of Robert A.
Whorton signed the Warranty Deed conveying the property to
Josh E. Rodriguez, through and including March 15, 2007. 

 Despite the fact that McCright states that she is challenging the legal
sufficiency of all of the above findings, she specifically addresses only certain aspects
of some of the findings identified above, and she does not address the majority of the
fact-findings made within the above enumerated findings. Additionally, much of her
discussion in her briefing does not match the identified, challenged findings.
Nevertheless, we have attempted to address McCright's specific complaints below. 
To the extent that she seeks to challenge other portions of the findings, she has
inadequately briefed these challenges and has waived them for our review. See Tex.
R. App. P. 38.1. We now turn to McCright's specific complaints.

 In support of her challenges to findings 11 and 24, McCright contends that she
testified that she did not have an attorney at the November 2001 meeting and that she
did not agree to give Whorton's estate the deed in lieu of foreclosure in December
2005. A finding as to whether or not McCright had an attorney at the November 2001
meeting is not necessary to support the judgment. See Cooke County Tax Appraisal
Dist. v. Teel, 129 S.W.3d 724, 731 (Tex. App.--Fort Worth 2004, no pet.) (stating
that "an immaterial finding of fact is harmless and not grounds for reversal"). 
Moreover, Norman Snapp, Whorton's certified public accountant, testified that
McCright had an attorney with her during this meeting. To the extent that this
presented a credibility dispute, the trial court, as the fact-finder in resolving this
dispute, could have chosen to believe Snapp. See Murff, 615 S.W.2d at 700. In
regard to McCright's second complaint, although neither finding 11 nor finding 24
directly related to the deed in lieu of foreclosure, our review of the record reveals
sufficient evidence, through the testimony of Johnnie Lue Fisk and Norman Snapp,
among others, as well as a copy of the deed in lieu of foreclosure itself, to support a
finding that McCright freely and voluntarily agreed to give Whorton's estate the deed
in lieu of foreclosure. Accordingly, we hold that the evidence is legally sufficient to
support findings 11 and 24.

 In support of her challenges to findings 30, 31, and 32, McCright contends that
she was not given the opportunity to consult with an attorney prior to signing the deed
in lieu of foreclosure, there is insufficient evidence to support the finding that the
property of the Whorton estate was held by the Whorton trusts, and Johnnie Lue Fisk
never accepted the property as the executor of the Whorton estate. However,
appellees offered testimony that McCright was given the opportunity to consult an
attorney before signing the deed in lieu of foreclosure, and the trial court was entitled
to resolve any credibility disputes on this issue against McCright. See id. In regard
to McCright's complaint about the sufficiency of the evidence to support a finding
that the property from Whorton's estate was held in trusts to which William Fisk, and
subsequently Johnnie Lue Fisk, served as trustee, appellees introduced into evidence
a copy of Robert A. Whorton's will and the Whorton trust documents, indicating that
property from Whorton's estate was to be placed in these trusts. Johnnie Lue Fisk
further testified that, at the time the deed in lieu of foreclosure was signed, she was
serving as the successor trustee of the trusts that held property from the Whorton
estate and that she signed and accepted the deed in lieu of foreclosure in her capacity
as trustee. Although Johnnie Lue Fisk conceded that she qualified to serve as
executor only after the signing of the deed in lieu of foreclosure, the evidence
established that the deed in lieu of foreclosure was accepted by the trusts and that the
property was later conveyed to the Whorton estate and ultimately to Rodriguez. 
Accordingly, we hold that the evidence is legally sufficient to support findings 30, 31,
and 32.

 In support of her challenge to the award of attorney's fees in finding 70,
McCright asserts that Huff, Whorton's estate's lawyer, did not testify. She further
asserts that "there was no proof that the legal work was done or that it had the value
of $25,000 or that it was reasonable and necessary." Appellees respond that the
reasonable and necessary attorney's fees paid in this suit by the Whorton estate on the
breach of contract claim were established by the testimony of Johnnie Lue Fisk at trial
on January 8, 2007. Appellees further note that a "detailed, cumulative invoice for
legal services rendered" by Huff was admitted into evidence. 

 First, we note that McCright has not challenged finding 68, wherein the trial
court found that appellees, as defendants and counterclaimants, hired Huff to
represent them in the suit, and finding 69, wherein the trial court found that Johnnie
Lue Fisk, as executor of Whorton's estate, received a bill for attorney's fees from
Huff for services rendered from September 9, 2006 through December 31, 2006,
Johnnie Lue Fisk paid Huff $25,000 in attorney's fees for services rendered during
this date range, and Johnnie Lue Fisk still owed Huff the remaining balance reflected
in the invoice. See London, 94 S.W.3d at 149 (discussing legal effect of
unchallenged findings). 

 Second, we note that section 38.001 of the Texas Civil Practice and Remedies
Code provides that "[a] person may recover reasonable attorney's fees from an
individual or corporation, in addition to the amount of a valid claim and costs, if the
claim is for . . . an oral or written contract." Tex. Civ. Prac. & Rem. Code Ann. §
38.001 (Vernon 1997). Also, section 38.004 specifically authorizes a trial court to
take judicial notice of the usual and customary attorney's fees and of the contents of
the case file without receiving further evidence in a proceeding before the court when
those attorney's fees are recovered pursuant to section 38.001. Id. § 38.004 (Vernon
1997); see also Gill Sav. Ass'n v. Chair King, Inc., 797 S.W.2d 31, 32 (Tex. 1990)
("The record of the trial court proceedings reflected the complexity of the case. The
trial court's own proceedings together with the fact that it may take judicial notice of
usual and customary fees constitute some evidence to support the award of appellate
attorney's fees."); Superior Ironworks, Inc. v. Roll Form Prods., Inc., 789 S.W.2d
430, 431 (Tex. App.--Houston [1st Dist.] 1990, no writ) (stating that, in context of
claim for services rendered under section 38.001, "it was in the court's discretion to
award attorney's fees in the event of an appeal even though no evidence was offered
on this matter").

 Here, the trial court, in its final judgment, awarded Johnnie Lue Fisk, in her
capacity as executrix of the Whorton estate, damages in the amount of $8,117.09 for
delinquent real estate taxes for the years 2003 and 2004. The trial court's final
judgment reflected that these damages were awarded based on Johnnie Lue Fisk's
breach of contract claim. The trial court also stated that the attorney's fees that it
awarded were incurred by Johnnie Lue Fisk, as executrix of Whorton's estate, "in
having to pursue the breach of contract claims in this lawsuit." Under these
circumstances, the trial court would have been able to take judicial notice of Johnnie
Lue Fisk's attorney's fees expended in pursuing her breach of contract claim against
McCright. See Tex. Civ. Prac. & Rem. Code Ann. §§ 38.001, 38.004. Additionally,
the record reflects that the trial court did not simply calculate its attorney's fees award
based on its judicial notice of its own case file and its determinations on the
complexity of the issues involved. Rather, Johnnie Lue Fisk introduced into evidence
a copy of a legal invoice from Huff for services rendered from September 9, 2006
until December 31, 2006. The invoice stated that Johnnie Lue Fisk had expended
fees and costs in the amount of $27,643, Huff had spent 67.5 hours on the case at a
rate of $400 per hour, and the legal work performed included discovery responses,
trial preparation, and court appearances. This invoice was introduced during Johnnie
Lue Fisk's testimony, wherein she identified the invoice from Huff to her in her
capacity as executor of Whorton's estate. Based on this invoice, as well as the trial
court's ability to take judicial notice of its own file, we hold that there is some
evidence to support the award of attorney's fees and, thus, the evidence is legally
sufficient to support finding 70. (4)

 In support of her challenge to the damages award made to Rodriguez in finding
71, McCright asserts that Rodriguez "used the wrong measure of damages" in that
"[h]e simply divided his claimed mortgage payments by 30 days to arrive at the daily
figure" and that "[t]here was no proof of what the loss of use was." 

 In its original March 16, 2007 judgment, the trial court awarded Rodriguez
damages in the amount of $19,906.60, "being $82.60 per day for the 241 days from
and including July 18, 2006, the date Johnnie L. Fisk as Executrix of the Estate of
Robert A. Whorton signed the Warranty Deed conveying the property to Josh E.
Rodriguez, through and including March 15, 2007, the date before the date this
judgment is signed." In an amended final judgment, the trial court reduced its award
and awarded Rodriguez damages in the amount of $17,346.00, "being $82.60 per day
for the 210 days from and including August 18, 2006, the date Johnnie L. Fisk as
Executrix of the Estate of Robert A. Whorton signed the Warranty Deed conveying
the property to Josh E. Rodriguez, through and including March 15, 2007, the date
before the date this judgment is signed." Despite its amended judgment, in its
subsequently entered findings of fact, the trial court again stated that it found,
consistent with its original judgment, that Rodriguez incurred actual damages in the
amount of $19,906.60 based on July 18, 2006 as the start date for Rodriguez's loss
of use. 

 Appellees note that the trial court "corrected the erroneous calculation" for
Rodriguez's loss of use of the property by changing the time period for the loss of use
from beginning on July 18, 2006 to beginning on August 18, 2006, thereby reducing
Rodriguez's damages "from $19,906.60 to $17,346." In its conclusions of law, the
trial court also stated that Rodriguez had sustained actual damages of $17,346 based
on a loss of use beginning on August 18, 2006. At trial, Rodriguez offered testimony
in support of two measures of damages. First, Rodriguez testified to a loss of benefit
measure of damages, based on rental income he could have made from the property
had McCright timely vacated the property. Rodriguez testified that this measure of
damage amounted to $467.33 a day. Second, Rodriguez testified to a loss of use
measure of damages, which he calculated by dividing his monthly mortgage payment,
and he testified that this amounted to $88.66 per day. The trial court awarded
Rodriguez damages based on his loss of use, but instead calculated his loss of use to
be $82.60 per day--less than the amount testified to by Rodriguez. Accordingly, we
hold that legally sufficient evidence supports the damages awarded to Rodriguez in
finding 71. (5)

 Although McCright identifies certain challenged conclusions of law, she does
not separately discuss or address these conclusions in any way in her briefing, and she
has inadequately briefed these challenges. See Tex. R. App. P. 38.1. Nevertheless,
we set forth the identified conclusions and address the sufficiency of the evidence to
support those conclusions. The identified conclusions provided,

 5. Plaintiff Karen McCright made an agreement and contract with
the Estate of Robert A. Whorton that if she paid the taxes,
maintained the property, and made payments in an amount equal
to the Note payments when she was able to do so; then she would
be allowed to remain as a tenant at will until the property was
sold or she found a place to relocate her business, whichever
occurred first.


 7. Plaintiff Karen McCright breached the contract and agreements
with the Estate of Robert A. Whorton.


 8. Josh E. Rodriguez is the lawful owner of the property and has the
lawful right to possession of the property.


 9. Plaintiffs have trespassed on the property of Josh E. Rodriguez.


 11. Josh E. Rodriguez has suffered damages as a result of Plaintiffs'
conduct.


 12. Josh E. Rodriguez is entitled to recover actual damages from
Plaintiffs for trespass and the wrongful withholding of possession
of the property in the amount of $17,346.00, being $82.60 per day
for the 210 days from and including August 18, 2006, the date
Johnnie L. Fisk as Executrix of the Estate of Robert A. Whorton
signed the Warranty Deed conveying the property to Josh E.
Rodriguez through and including March 15, 2007, the date before
the date the original judgment in this case was signed. 
Defendants are entitled to a credit to the amounts awarded to Josh
E. Rodriguez from, after and including August 18, 2006 through
the date the judgment in this case is paid in full.


 13. The Estate of Robert A. Whorton has incurred actual damages for
the failure of Plaintiffs to pay delinquent real estate taxes for
years 2003 and 2004 in the amount of $8,117.09.


 14. Johnnie L. Fisk as Executrix of the Estate of Robert A. Whorton
has incurred reasonable and necessary attorney's fees in the sum
of $25,000 in having to pursue the breach of contract claims in
this lawsuit. 


 16. Josh E. Rodriguez and Johnnie L. Fisk as Executrix of the Estate
of Robert A. Whorton are entitled to recover from Plaintiffs their
taxable court costs.


 17. Josh E. Rodriguez is entitled to recover from Plaintiffs post-judgment interest on the sum of $17,346 (less any credit for
payments made by Plaintiffs from, after and including August 18,
2006, through the date it is paid in full) at the rate of 8.25% per
annum, compounded annually, from and including the date the
judgment in this case is signed and until the said amount is paid
in full.


 18. Johnnie L. Fisk as Executrix of the Estate of Robert A. Whorton
is entitled to recover from Plaintiffs post-judgment interest on the
sum of $25,000 (less any credit for payments made by Plaintiffs
from, after and including August 18, 2006, through the date it is
paid in full) at the rate of 8.25% per annum, compounded
annually, from and including the [date the] judgment in this case
is signed and until the said amount is paid in full.


 We hold that Norman Snapp's testimony and McCright's own testimony
provided legally sufficient evidence to support conclusions 5 and 7 that McCright
reached an agreement to pay taxes, maintain the property, and make payments equal
to the note payments, when able, in order to remain as a tenant at will on the property
and that McCright breached this agreement. We further hold that the warranty deed
admitted into evidence, together with appellees' and McCright's testimony, provided
legally sufficient evidence to support conclusions 8 and 9 that Rodriguez owned the
property and that McCright trespassed on the property by refusing to relinquish
possession after Rodriguez's purchase. Based on the same evidence that supported
the findings that Rodriguez was damaged by McCright's conduct, we further hold that
legally sufficient evidence supports conclusions 11 and 12 that Rodriguez was
damaged in the amount of $17,346 by McCright. We further hold that Johnnie Lue
Fisk's testimony that McCright did not timely pay the taxes on the property and that
Whorton's estate had to pay $8,117.09 in delinquent taxes for the years 2003 and
2004 at the time it sold the property to Rodriguez provided legally sufficient evidence
to support conclusion 13. (6) Consistent with our previous holding, we hold that there
is legally sufficient evidence to support conclusion 14 on the amount of attorney's
fees expended by Johnnie Lue Fisk in pursuing her breach of contract claims. 
Finally, in regard to conclusions 16, 17, and 18, McCright has not provided any
explanation as to why appellees were not entitled to recover their court costs or
postjudgment interest, and, thus, she has waived those issues for review. See Tex. R.
App. P. 38.1(h).

 We overrule McCright's third issue. (7)

Conclusion

 We affirm the judgment of the trial court.



 Terry Jennings

 Justice


Panel consists of Chief Justice Radack and Justices Jennings and Bland.



1. It is undisputed that, after this letter, McCright remained on the property, and
McCright's testimony indicated that she did so pursuant to an agreement with William
Fisk. Furthermore, Norman Snapp, Whorton's certified public accountant, testified
that, in November 2001, Karen McCright and William Fisk met and reached an
agreement allowing McCright to remain on the property as a tenant at will until the
property was sold or McCright relocated her business, McCright agreed to pay the
taxes on the property and maintain the property, and McCright would make payments
on the note if she had any excess funds. 
2. The pleadings supporting these counterclaims are not contained in the record, but the
trial court summarized the parties' claims and defenses in its findings of fact and
conclusions of law and neither party complains about the lack of these pleadings on
appeal.
3. Based on our review of the briefing, it is not clear if McCright is asserting that there
is no evidence that Johnnie Lue Fisk served as the trustee of the trusts holding
Whorton's property at the time the parties entered into the deed in lieu of foreclosure
or if her primary contention is that there is no evidence that Johnnie Lue Fisk was the
executor. The record establishes that Johnnie Lue Fisk served as the trustee at that
time and, in fact, she signed the deed in lieu of foreclosure in her capacity as trustee.
McCright does not cite any authority for the proposition that Johnnie Lue Fisk could
not execute the deed in lieu of foreclosure in this capacity.
4. In a reply brief, filed after submission, McCright complains that appellees "failed to
present any evidence of presentment of attorney's fees to appellant as required by
[section 38.002 of the Texas Civil Practice and Remedies Code]." Tex. Civ. Prac.
& Rem. Code Ann. § 38.002 (Vernon 1997). Even if we considered the merits of
McCright's argument, her assertion that "appellees failed to present any evidence of
the attorney's fees to appellant at least 30 days prior to the trial" misses the point of
the procedural requirement provided for in section 38.002. Section 38.002 provides
that in order to recover attorney's fees under chapter 38: (1) the claimant must be
represented by an attorney; (2) the claimant must present the claim to the opposing
party or to a duly authorized agent of the opposing party; and (3) payment for the just
amount owed must not have been tendered before the expiration of the 30th day after
the claim is presented. Id. Our court has recently explained that presentment under
section 38.002 is "required to allow the entity against whom [the claim] is asserted an
opportunity to pay it before incurring an obligation for attorney's fees." Quality
Infusion Care, Inc. v. Health Care Serv. Corp., 224 S.W.3d 369, 387 (Tex.
App.--Houston [1st Dist.] 2006, no pet.). Thus, contrary to McCright's specific
claim, section 38.002 does not contain any requirement for presentment of an
attorney's fees claim or evidence of attorney's fees 30 days prior to trial. Moreover,
our review of the record shows that well before 30 days prior to trial, Johnnie Lue
Fisk, as executrix of Whorton's estate, by and through her attorney, had given
McCright notice that delinquent taxes were due and owing on the property and, as a
result, McCright's agreement to remain on the property had been revoked and Fisk
was demanding that McCright vacate the property. See Standard Constructors, Inc.
v. Chevron Chem. Co., 101 S.W.3d 619, 627 (Tex. App.--Houston [1st Dist.] 2003,
pet. denied) (noting that section 38.002 does not require any particular form of
presentment).



5. On appeal, McCright does not complain about any inconsistency between the findings
of fact, the conclusions of law, or the amended judgment.
6. We also note that McCright failed to challenge finding 28 that she failed to pay
property taxes for the years 2001 through 2005 and finding 53 that Whorton's estate
paid delinquent property taxes on the property for years 2003 and 2004 in the amount
of $8,117.09. 
7. Within her briefing, and unconnected to any of her three issues, McCright complains
that the trial court abused its discretion in permitting the parties to reopen the
presentation of evidence after closing because there was no motion to reopen. As
noted by appellees, Texas Rule of Civil Procedure 270 provides that, "[w]hen it
clearly appears to be necessary to the due administration of justice, the court may
permit additional evidence to be offered at any time; provided that in a jury case no
evidence on a controversial matter shall be received after the verdict of the jury." 
Tex. R. Civ. P. 270. In reopening the evidence, the trial court explained that it wanted
to hear more evidence on certain disputed fact issues. McCright has not cited any
authority to support her argument and has failed to show that the trial court abused its
discretion in reopening the evidence.