**Mary Helen and Gilfred CHARETTE, Appellants**

v.

**Kassie and John Blake FITZGERALD, Appellees.**

No. 14–05–00918–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Dec. 21, 2006.

James M. McGraw, Michael Antoine Ackal III, Houston, for appellants.

Jenny Nguyen, Houston, for appellees.

Panel consists of Justices FOWLER, EDELMAN, and FROST.

## OPINION

KEM THOMPSON FROST, Justice.

This appeal arises from a residential landlord-tenant dispute. The tenants brought suit against their landlords for wrongful eviction, unauthorized seizure of personal property, wrongful lockout, and breach of contract. The landlords counterclaimed alleging the tenants had abandoned the rental property and breached the lease agreement. The trial court found that the tenants did not breach the lease agreement and that the landlords wrongfully evicted the tenants in violation of section 92.0081 of the Texas Property Code. The trial court awarded the tenants statutory penalties and attorney's fees. The landlords appeal contending that (1) the trial court erred in finding the Texas Property Code violation because the tenants abandoned the property and breached the lease agreement; and (2) the evidence is legally and factually insufficient to support the attorney's fees award. Finding merit only in the latter argument, we modify the judgment to omit the award of attorney's fees, and affirm the judgment as modified.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On July 8, 2003, appellants/landlords Mary Helen and Gilfred Charette entered into a residential lease agreement (the "Lease") with appellees/tenants Kassie and John Blake Fitzgerald for the rental of a house located at 4036 Amherst, Houston,

Harris County, Texas (hereinafter the "Rental Property"). The lease term began on July 31, 2003 and ran through July 30, 2004. Under the Lease, the Fitzgeralds paid both a security deposit of $1,975.00 and a pet deposit of $1,000, $500.00 of which was non-refundable. In addition, during the term of the Lease, the Fitzgeralds timely paid rent of $1,850.00 per month for every month of the lease term.

In mid-May 2004, the Fitzgeralds gave written notice of their intent to terminate the tenancy at the end of the lease term, as provided in the Lease. This notice was given and received more than sixty days before the termination date. Shortly after the Fitzgeralds gave the notice, the Charettes' adult daughter, Robbie Gail Charette, who assisted her parents in managing the Rental Property, sent an e-mail to the Fitzgeralds acknowledging the timely notice of termination. In this May 25, 2004 e-mail, Robbie Charette urged the Fitzgeralds to reconsider. The Fitzgeralds, however, did not change their minds and, on June 14, 2004, they gave written notice to the Charettes of their forwarding address. The Charettes immediately began seeking new tenants for the Rental Property.

On or about June 23, 2004, the Fitzgeralds began to move their belongings from the Rental Property to their new residence. On June 24, 2004, the Fitzgeralds timely paid their last month's rent to the Charettes to cover the amount owing through the end of the lease term (July 30, 2004).

Even though the Fitzgeralds had paid rent through the end of the lease term, and even though they still had many of their belongings at the Rental Property, the Charettes requested permission to paint and clean the Rental Property to make it more presentable for showing to prospective tenants. To accommodate the Charettes in their plans, on June 29, 2004,

the Fitzgeralds agreed to move the remainder of their personal property to the sun room, though, under the Lease, they had no obligation to do so. In addition, as another accommodation to the Charettes, the Fitzgeralds agreed to board their pets while they went on vacation from July 3, 2004 through July 15, 2004, to facilitate the Charettes' plans to show the Rental Property to prospective tenants. The Fitzgeralds had no contractual obligation to make these accommodations and apparently did so purely out of a benevolent spirit.

Although Robbie Charette spoke to the Fitzgeralds the day before they left for vacation (July 2, 2004), she wrote a letter to them the next day (July 3, 2004), declaring them in default of the Lease. In the letter Robbie Charette, on behalf of the Charettes, demanded that the Fitzgeralds remove the remainder of their possessions from the premises immediately. Four days later (on July 7, 2004), while the Fitzgeralds were still on vacation, Robbie Charette wrote them again demanding that they immediately vacate the Rental Property, and informing them that the locks would be changed if the Lease "defaults" were not cured before noon on July 10, 2004. Without even giving the Fitzgeralds a chance to return from their vacation, Robbie Charette changed the locks on the doors, effectively seizing the Fitzgeralds' personal possessions. She wrote them another letter, this time demanding approximately $1,685.87 for repairs to the Rental Property. At this time, the Fitzgeralds were not only maintaining possessions at the Rental Property, but also were current in their rent and the lease term had not expired.

On July 21, 2004, the Charettes filed an "Original Petition for Forcible Detainer" seeking to oust the Fitzgeralds from the

Rental Property.[1] A few weeks later, on August 3, 2004, the Fitzgeralds filed an "Original Petition and Application for Temporary Restraining Order and Temporary Injunction," alleging claims for breach of contract, wrongful eviction, wrongful lockout, unlawful removal of their personal property, and wrongful refusal to refund their security deposit. In addition, the Fitzgeralds sought return of the personal property the Charettes had seized from the Rental Property while they were on vacation. The Charettes filed a counterclaim for breach of contract and sought to recover for alleged damages to the Rental Property. The Charettes also sought to recover amounts they claimed were owing under the Lease, including a "re-letting charge" of $2,500, ostensibly due to the Fitzgeralds' "abandonment" of the Rental Property. The Charettes eventually returned the personal property they had seized during the wrongful eviction.

On May 20, 2005, the trial court filed extensive findings of fact and conclusions of law, finding, among other things, that the Fitzgeralds were liable to the Charettes for $3,180.45, which included (1) $624.90 in damages to the Rental Property; (2) $55.55 in damages to replace the garage remote controls; and (3) a "re-letting fee" of $2500 attributable to the Fitzgeralds' "abandonment" of the Property on June 23, 2004. The trial court also found that the Charettes wrongfully retained the Fitzgeralds' security deposit and pet deposit of $2,975, which the trial court determined resulted in the Fitzgeralds owing $205.45 to the Charettes.

The trial court concluded that the Charettes violated section 92.0081 of the Texas Property Code by wrongfully preventing the Fitzgeralds from entering the Rental Property. The trial court awarded the Fitzgeralds $2,144.55 in statutory penalties (after offsetting the $205.45) and $25,422.90 in attorney's fees. The trial court also awarded the Fitzgeralds $7,500 in attorney's fees should the Charettes appeal to the court of appeals, and another $10,000 should the case be appealed to the Texas Supreme Court.

The Charettes timely filed their notice of appeal. The Fitzgeralds filed a notice of cross-appeal, which the Charettes have moved to dismiss as untimely.

## II. JURISDICTION OVER CROSS-APPEAL

■ The Fitzgeralds have attempted to bring a cross-appeal in this case. The Charettes have filed a "Motion to Strike Cross–Appellants' Brief and to Dismiss Cross–Appeal" in which they contend that the Fitzgeralds failed to timely file their notice of cross-appeal. The Charettes filed their notice of appeal on August 19, 2005. The Fitzgeralds were required to file any notice of cross-appeal on or before September 2, 2005. *See* TEX. R. APP. P. 26.1(d). The notice of cross-appeal was not filed until October 6, 2005. Although the Fitzgeralds contend that they timely filed their notice of cross-appeal, there is no evidence in the record, other than their counsel's affidavit, to show that this notice was timely filed.

The Fitzgeralds have not established that their notice of cross-appeal was timely filed. Because the Fitzgeralds failed to timely file a notice of cross-appeal, we lack jurisdiction to entertain their issues as stated in their cross-appellants' brief. Therefore, we grant the Charettes' motion to dismiss the cross-appeal. *See* TEX. R. APP. P. 42.3(a). Having dismissed the Fitzgeralds' cross-appeal, we do not reach any of their cross-issues.

---

1. This suit was ultimately dismissed as moot.

### III. ISSUES AND ANALYSIS

**A. Did the trial court err in concluding that the landlords violated section 92.0081 of the Texas Property Code by preventing the tenants from entering the leased property?**

In their first issue, the Charettes challenge the trial court's finding that they violated section 92.0081(b) of the Texas Property Code by changing the locks on the doors of the Rental Property on July 10, 2004, at a time when rent had been paid. This part of the statute provides as follows:

> (b) A landlord may not intentionally prevent a tenant from entering the leased premises except by judicial process unless the exclusion results from:
>
> (1) bona fide repairs, construction, or an emergency;
>
> (2) removing the contents of premises abandoned by a tenant; or
>
> (3) changing the door locks of a tenant who is delinquent in paying at least part of the rent.

TEX. PROP. CODE ANN. § 92.0081(b) (Vernon Supp.2006). In regard to the Fitzgeralds' claims under section 92.0081, the trial court made the following conclusions of law:

> (10) The Charettes changed the locks on the doors of the Rental Property on July 10, 2004.
>
> (11) The Charettes intentionally prevented the Fitzgeralds from enter-

ing the Rental Property on and after July 10, 2004.

> (12) The Fitzgeralds were not delinquent in their rent as of July 10, 2004.
>
> (13) The Fitzgeralds provided the Charettes unlimited access to the Rental Property to make repairs or perform necessary construction in June and July of 2004.
>
> (14) The Charettes do not argue that an emergency existed on the Rental Property in July 2004.
>
> (15) The Charettes did not remove the Fitzgeralds' personal items from the Rental Property.
>
> (16) The Charettes locked the Fitzgeralds out of the home at 4036 Amherst for reasons other than (a) to make bona fide repairs, construction, or an emergency; (b) to remove the contents of the premises abandoned by a tenant; or (c) to change the door locks of a tenant who is delinquent in paying at least a part of the rent.
>
> (17) The Charettes violated subsection (b) of Texas Property Code, section 92.0081(b).
>
> (19) The Rental Property was not the Fitzgeralds' dwelling after June 23, 2004, because they are deemed to have "abandoned" the Rental Property on that date.
>
> (25) By the plain language of the Lease, the Fitzgeralds are deemed to have abandoned the Rental Property on June 23, 2004.[2]

---

**2.** Paragraph 24 of the Lease states as follows:

If a tenant abandons the Property, Tenant will be in default. "Abandonment" means Tenant fails to comply with any provisions of the Lease and fails to occupy the Property for five (5) consecutive days. However, at any point during the term of this Lease, if Tenant has moved substantially all possessions from the property or does not have a

bed to sleep in, the property will be deemed "abandoned" and Landlord has the right to enter immediately to protect the property without notice and without waiting for the five (5) day period to lapse ... If Tenant abandons the property, Tenant will be responsible for all costs, including but not limited to reletting charges, utility fees, and locksmith service.

On appeal, a reviewing court will uphold conclusions of law if the trial court's judgment can be sustained on any legal theory supported by the evidence. *Spiller v. Spiller*, 901 S.W.2d 553, 556 (Tex.App.-San Antonio 1995, writ denied). Conclusions of law will not be reversed, unless they are erroneous as a matter of law. *Johnston v. McKinney American, Inc.*, 9 S.W.3d 271, 277 (Tex.App.-Houston [14th Dist.] 1999, pet. denied). In addition, a trial court's conclusions of law are reviewed de novo as legal questions. *Id.* Incorrect conclusions of law will not require a reversal, however, if the controlling finding of facts will support a correct legal theory. *Id.; Stable Energy, L.P. v. Newberry*, 999 S.W.2d 538, 547 (Tex.App.-Austin 1999, pet. denied).

The Charettes argue they were justified in changing the locks on the Rental Property and preventing the Fitzgeralds from entering the Rental Property because the Fitzgeralds had abandoned the Property. In support of this argument, the Charettes urge this court to conclude that if a landlord can lock out a tenant who retains personal property on the leased premises under section 92.0081(b)(3) for failure to pay rent, then a landlord should be able to do the same under section 92.0081(b)(2) in situations in which the tenant, though having fully paid all rent, has moved into another dwelling, thereby "abandoning" the leased premises. The Charettes contend that to require a landlord to remove the personal property after a tenant has "abandoned" the premises is inequitable because the landlord must incur additional costs in removing the property before preventing a tenant from en-

tering the premises. We find no merit in the Charettes' argument.

The Fitzgeralds did not abandon the Rental Property within the meaning of the Texas Property Code. The plain meaning of the statute undermines the Charettes' argument. When, as in this case, the language of the statute is unambiguous, we must seek the legislative intent as found in the plain and common meaning of the words and terms used. *Sorokolit v. Rhodes*, 889 S.W.2d 239, 241 (Tex.1994); *Monsanto Co. v. Cornerstones Mun. Util. Dist.*, 865 S.W.2d 937, 939 (Tex.1993). We may not by implication enlarge the meaning of any word in the statute beyond its ordinary meaning. *Sorokolit*, 889 S.W.2d at 241. We must presume that every word in a statute has been used for a purpose and that every word excluded was excluded for a purpose. *Sw. Bell Tel. Co. v. Public Util. Comm'n*, 888 S.W.2d 921, 926 (Tex.App.-Austin 1994, writ denied).

The Charettes locked the Fitzgeralds out of the Rental Property for reasons other than (a) to make bona fide repairs, construction, or an emergency; (b) to remove the contents of the premises abandoned by a tenant; or (c) to change the door locks of a tenant who is delinquent in paying at least a part of the rent. *See* TEX. PROP. CODE ANN. § 92.0081(b) (Vernon Supp.2006). We cannot expand the language in section 92.0081(b) to allow a landlord to prevent a tenant from entering the leased property even though the landlord does not do so to remove the contents of the tenant's personal property. It is undisputed that the Fitzgeralds had personal property on the leased premises at the time the Charettes changed the locks. It is also undisputed that the Charettes

Although we do not reach the issue asserted in the Fitzgeralds' attempted cross-appeal regarding interpretation of this Lease provision, we note the trial court's finding that when the

Fitzgeralds moved substantially all of their possessions and ceased to sleep at the Rental Property on June 23, 2004, they "abandoned" the Rental Property.

changed the locks—not because of some reason in section 92.0081(b)—but because of their insistence that the Fitzgeralds had "abandoned" the Property in violation of paragraph 24 of the Lease.[3] Thus, we conclude that the trial court did not err in determining that the Charettes violated section 92.0081(b) of the Texas Property Code. We overrule the Charettes' first issue.

### B. Is the evidence legally and factually sufficient to support the trial court's award of attorney's fees to the tenants?

■■■■ In their second issue, the Charettes contend that the evidence is legally and factually insufficient to support the trial court's award of attorney's fees to the Fitzgeralds under section 92.0081(h) of the Texas Property Code. *See* TEX. PROP. CODE ANN. § 92.0081(h) (Vernon Supp. 2006). Section 92.0081(h) provides that, if a landlord violates section 92.0081, the tenant "may ... recover from the landlord ... reasonable attorney's fees." Therefore, this statute affords the trial court a measure of discretion in deciding whether to award attorney's fees. *See Bocquet v. Herring,* 972 S.W.2d 19, 20 (Tex.1998). Accordingly, we review the trial court's ruling on a request for expenses under this statute for an abuse of discretion. *Id.* at 20–21. Generally, the test for abuse of discretion is whether the trial court acted without reference to any guiding rules and principles or whether the trial court acted arbitrarily and unreasonably. *See McDaniel v. Yarbrough,* 898 S.W.2d 251,

253 (Tex.1995). However, under section 92.0081(h), the trial court's discretion is limited by the requirement that the attorney's fees be reasonable. *See* TEX. PROP. CODE ANN. § 92.0081(h); *Bocquet,* 972 S.W.2d at 20–21. Therefore, the trial court abuses its discretion if it awards expenses under this statute without legally and factually sufficient evidence that the attorney's fees awarded were reasonable. *See Bocquet,* 972 S.W.2d at 20–21; *Bass v. Walker,* 99 S.W.3d 877, 882–83 (Tex.App.-Houston [14th Dist.] 2003, pet. denied).

■■■■ In determining if the evidence is legally sufficient, we must consider evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *See City of Keller v. Wilson,* 168 S.W.3d 802, 821 (Tex.2005). We must credit favorable evidence if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not. *See id.* at 827. We must determine whether the evidence at trial would enable reasonable and fair-minded people to find the facts at issue. *See id.* The factfinder is the sole judge of the credibility of the witnesses and the weight to give their testimony. *See id.* at 819. This court must sustain a no-evidence challenge if the record shows one of the following: (1) a complete absence of a vital fact, (2) rules of law or evidence bar the court from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a scintilla, or (4) the evidence establishes

---

3. The Charettes claim that it was not necessary for them to remove the Fitzgeralds' personal property from the premises in order to lawfully prevent them from entering the Rental Property because the parties entered into a bailment agreement for storage of the Fitzgeralds' property. There is absolutely no evidentiary support for this argument in the record.

And even if the parties had entered into some such agreement, the elements of a legally cognizable bailment were not established in this case. Moreover, such an agreement would not expand or change the plain meaning of the terms set forth in section 92.0081(b) of the Texas Property Code.

conclusively the opposite of the vital fact. *See id.* at 810.

 When reviewing a challenge to the factual sufficiency of the evidence, we examine the entire record, considering both the evidence in favor of, and contrary to, the challenged finding. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986). After considering all the evidence, we set aside the fact finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Pool v. Ford Motor Co.,* 715 S.W.2d 629, 635 (Tex. 1986). The trier of fact is the sole judge of the credibility of the witnesses and the weight to be given to their testimony. *GTE Mobilnet of S. Tex. v. Pascouet,* 61 S.W.3d 599, 615–16 (Tex.App.-Houston [14th Dist.] 2001, pet. denied). We may not substitute our own judgment for that of the trier of fact, even if we would reach a different answer on the evidence. *Maritime Overseas Corp. v. Ellis,* 971 S.W.2d 402, 407 (Tex.1998). The amount of evidence necessary to affirm a judgment is far less than that necessary to reverse a judgment. *Pascouet,* 61 S.W.3d at 616.

 After reviewing the record, we find no evidence that the Fitzgeralds' attorney's fees were reasonable. The Fitzgeralds do not assert there is any such evidence in the record; however, they argue that this court should uphold the attorney's fees award for two reasons: (1) the record reflects that the parties "implicitly stipulated" to the reasonableness of the attorney's fees; and (2) the attorney's fees award is proper because the trial court can take judicial notice of the "usual and customary attorney's fees . . . without further evidence." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 38.004 (Vernon Supp. 2005).

An "implicit stipulation" is an oxymoron. Stipulations are express, not implied. The record reflects no stipulation or agreement made by the parties as to the reasonableness of the attorney's fees. The only reference to attorney's fees in the entire trial is contained in the following excerpt:

[Trial Court]: Okay. Are y'all going to cross-examine each other on attorney's fees or have you discussed it?

[Charettes' counsel]: I don't think so.

[Trial Court]: Okay. So maybe we can do that by affidavit, if y'all don't object?

[Charettes' counsel]: Be glad to.

[Trial Court]: If you are not going to cross each other, you can—

[Charettes' counsel]: State what they are.

[Trial Court]: Okay. Stand up and tell me what they are.

[Fitzgeralds' counsel]: Okay.

[Trial Court]: If we do it that way, tell me what your fee request is.

. . .

[Fitzgeralds' counsel]: Your Honor, my fee request for fees and expenses incurred in this matter, which includes numerous deposition notices, certificates of non-appearance, appearing at the eviction hearing, a TRO and injunction is $25,422.90.

[Trial Court]: Okay. Anything else in your request?

[Fitzgeralds' counsel]: Also, for attorney's fees on appeal, that would be through trial, attorney's fees on appeal would be $7,500. For appeal to the Court of Appeals, 5,000, and for application for writ of error to the Supreme Court, 5,000, if the writ of error is granted.

And, I guess I do have a have couple other exhibits which have been admitted already, but which have not been discussed, and those being Plaintiff's Exhibits 15, 16, and 17, which are my

demands to Robbie Charette for a key, and notice to her of the bond which was posted, and demand for return of the property after bond was posted.

[Trial Court]: Okay. Just make sure Ms. Leediker has those.

[Fitzgeralds' counsel]: I believe the court reporter does have them.

[Charettes' counsel]: Yes.

[Trial Court]: Anything else?

[Fitzgeralds' counsel]: No, Your Honor. Plaintiff rests.

[Trial Court]: Okay. And do you have time to do a witness?

[Charettes' counsel]: I can at least do my attorney's fees, if that's okay.

[Trial Court]: Sure.

. . .

[Charettes' counsel]: The request of attorney's fees for Defendant is $11,715.27. That includes both fees as well as deposition transcript costs and other expenses.

[Trial Court]: Okay.

[Charettes' counsel]: With regards to attorney's fees to the Court of Appeals and/or to the Supreme Court, I would ask those fees be the same as requested by Plaintiff.

[Trial Court]: Okay. All right . . .

The Fitzgeralds contend that the foregoing exchange demonstrates that there was a stipulation of sorts between the trial court and both parties' counsel that the attorney's fees requested were reasonable because the Charettes did not object to the Fitzgeralds' request for attorney's fees. The Charettes did not implicitly agree that the Fitzgeralds' claimed attorney's fees were reasonable. Because the parties did not make a stipulation on the record as to

the reasonableness of the attorney's fees, the reasonableness of the fees must be supported by record evidence, which brings us to the Fitzgeralds' next argument for upholding their award of attorney's fees.

 The Fitzgeralds contend that no such evidence was necessary because, under sections 38.003 and 38.004 of the Texas Civil Practices and Remedies Code, the trial court took judicial notice of the usual and customary attorney's fees in this case.[4] Under section 38.004, a trial court, without receiving evidence, can take judicial notice of (1) the usual and customary attorney's fees, and (2) the content of the file. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 38.004 (Vernon Supp.2005). Under section 38.003, the usual and customary fees are presumed reasonable. *See id.* § 38.003. However, for section 38.003 to apply, the claim must be a claim asserted under section 38.001. *See id.* § 38.003. Section 38.001 sets forth the following claims for which a party may recover reasonable attorney's fees: (1) rendered services; (2) performed labor; (3) furnished material; (4) freight or express overcharges; (5) lost or damaged freight or express; (6) killed or injured stock; (7) a sworn account; or (8) an oral or written contract. TEX. CIV. PRAC. & REM. CODE ANN. § 38.001 (Vernon 1997). This provision has no application in this case because the trial court awarded no relief on any of the foregoing grounds.

Section 38.004 does not allow courts to take judicial notice of reasonableness; rather, it allows a court to take judicial notice of "the usual and customary attorney's fee" in a bench trial. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 38.004. Because section 38.003 is limited to claims described in section 38.001, and because

4. This is the only basis on which the Fitgeralds contend that the trial court could take judicial notice of the reasonableness of their attorney's fees.

section 38.004 does not speak to judicial notice of reasonableness, this court has held that trial courts may not use section 38.004 to take judicial notice of the reasonableness of attorney's fees awarded under a statute other than section 38.001. *London v. London*, 94 S.W.3d 139, 147–49 (Tex.App.-Houston [14th Dist.] 2002, no pet.). Though there is currently a split on this issue among the courts of appeals, this court, of course, follows its own precedent. *Compare London*, 94 S.W.3d at 147–48 (rejecting argument that trial court could take judicial notice of reasonable attorney's fees recovered outside of section 38.001), *In re T.L.K.*, 90 S.W.3d 833, 841 (Tex.App.-San Antonio 2002, no pet.) (same), *Valdez v. Valdez*, 930 S.W.2d 725, 732–33 (Tex.App.-Houston [1st Dist.] 1996, no writ) (same), *Hasty, Inc. v. Inwood Buckhorn Joint Venture*, 908 S.W.2d 494, 503 (Tex.App.-Dallas 1995, writ denied) (same), *Richards v. Mena*, 907 S.W.2d 566, 573–74 (Tex.App.-Corpus Christi 1995, writ dism'd) (same), *with Matelski v. Matelski*, 840 S.W.2d 124 (Tex.App.-Fort Worth 1992, no writ) (holding that, under section 38.004, trial courts can take judicial notice of the amount of reasonable attorney's fees, even when fees are recovered under the Family Code), *and In re Estate of Kidd*, 812 S.W.2d 356, 359 (Tex.App.-Amarillo 1991, writ denied) (applying sections 38.003 and 38.004 in a will-contest case).

In their original petition, the Fitzgeralds state that they were entitled to attorney's fees under paragraph 31 of the Lease, Chapter 36 of the Texas Civil Practice and Remedies Code, and sections 92.0081 and 92.109 of the Texas Property Code. In its findings and conclusions, the trial court found that the Fitzgeralds were entitled to their reasonable attorney's fees under section 92.0081 of the Texas Property Code. *See* Tex. Prop. Code, § 92.0081(h) (Vernon Supp.2000). The trial court made no such finding under Chapter 38. Because the

Fitzgeralds did not seek or obtain attorney's fees under section 38.001, they cannot rely on sections 39.003 and 38.004 to bridge the gap left by the lack of evidence of the reasonableness of their attorney's fees. *See London*, 94 S.W.3d at 147–48. Likewise, because the record contains no stipulation of the parties and because there is no evidence in the record as to the reasonableness of the Fitzgeralds' attorney's fees, we conclude that the trial court abused its discretion in awarding attorney's fees to the Fitzgeralds under section 92.0081(h) of the Texas Property Code. Accordingly, we sustain the Charettes' second issue.

### IV. Conclusion

This Fitzgeralds' cross-appeal was untimely filed and is dismissed for lack of jurisdiction. The Charettes' challenge to the trial court's finding that they violated section 92.0081(b) of the Texas Property Code is without merit, and is overruled. However, the Charettes' second issue challenging the trial court's award of attorney's fees to the Fitzgeralds is sustained, and the judgment is modified to vacate the $25,422.90 attorney's fees award to the Fitzgeralds. The judgment is affirmed as modified.