

NUMBER 13-13-00476-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

VICTOR T. SERRANO,                                                            Appellant,

v.

MANUEL RAMOS,                                                                  Appellee.

### On appeal from the County Court at Law No. 4
### of Hidalgo County, Texas.

# MEMORANDUM OPINION

### Before Justices Benavides, Perkes, and Longoria
### Memorandum Opinion by Justice Benavides

This is an appeal from a trial de novo in a county court at law ("the trial court") of a

forcible entry and detainer action originally tried to a justice court.    By six issues,

appellant Victor T. Serrano asserts that:    (1) the trial court erred in denying his motion to

sever because the trial court lacked subject matter jurisdiction to hear appellee Manuel Ramos's claims brought in the trial court; (2) the evidence is factually and legally insufficient to support the trial court's finding that Serrano breached the contract at issue; (3) the trial court erred in awarding damages to Ramos; (4) the trial court erred in awarding Ramos attorney's fees; (5) the trial court failed to address Serrano's counterclaim to recover his $9,000 down payment paid to Ramos; and (6) the trial court failed to address Serrano's appeal of the forcible detainer judgment. We vacate and dismiss in part, reverse and render in part, and affirm in part.

## I.   BACKGROUND

On October 22, 2010, Serrano entered into an agreement with Ramos and Ramos's wife to purchase the Ramoses' home at 7601 North 20th Street in McAllen ("the home" or "the North 20th Street home"). The sales price of the home totaled $118,000. The agreement specified the following relevant terms:   (1) Serrano was to pay $18,000 in cash and obtain third-party financing for the remaining $100,000; (2) the contract was subject to Serrano "being approved for the financing described in the attached Third Party Financing Condition Addendum"; (3) that Serrano was to deposit $2,000 as earnest money with San Jacinto Title Company; and (4) the closing date for the sale was November 30, 2010. The third-party financing condition addendum to the agreement stated that Serrano "shall apply promptly for all financing" described in the addendum and make a reasonable effort to obtain approval for such financing. Furthermore, the addendum stated that if Serrano could not obtain financing, he may give written notice to Ramos within thirty days after October 22, 2010, and that the contract would terminate and the $2,000 earnest money would be refunded to Serrano. If Serrano failed to give

2

notice within the requisite thirty days, the contract would "no longer be subject to" Serrano obtaining financing.

A "Temporary Residential Lease" was executed contemporaneously with the October 22 agreement and stated that Ramos would lease the home at 7601 North 20th Street to Serrano for a total of $26.67 per day through the date of closing. The addendum further stated that Serrano had paid Ramos $800 "as a deposit to secure performance of this [l]ease." Concurrent to the execution of the contract, Ramos completed various repairs to the 20th Street property. Ramos testified that the repair costs totaled $550.

On November 30, 2010, Serrano did not close on the home, but according to Ramos's testimony, Serrano asked Ramos to "give him an extension of time . . . . Because [Serrano] was going to receive some money." As a result of the request, on December 3, 2010, Serrano and Ramos agreed to amend the October 22 agreement to: (1) change the closing date to April 29, 2011; and (2) require Serrano to pay $9,000 to Ramos as "partial down [ ] payment" by December 3, 2010 and pay another $9,000 to Ramos by January 3, 2011, again, as a "partial down [ ] payment." Ramos testified at trial that Serrano paid the $9,000 due on December 3, 2010, but he did not make the January 3, 2011 payment.

On April 29, 2011, Serrano again did not close on the purchase of the home. Ramos testified that at the time, Serrano also owed him three months of back rent totaling $2,400. Ramos stated that Serrano instructed him to take the $2,000 earnest money as a partial payment for the back rent and that Serrano would owe him the remaining $400. Despite his failures to close on the purchase of the home, Ramos stated that Serrano

3

nevertheless "insisted that he wanted to buy the house." On May 10, 2011, Serrano, Ramos, and Ramos's wife executed a "Release of Earnest Money," which directed the escrow agent, San Jacinto Title Company, to disburse the $2,000 to Ramos. Serrano paid Ramos the remaining $400 in cash.

After May 10, 2011, Serrano and Ramos amended their agreement for a second time and changed the closing date of the sale to August 29, 2011. The amendment acknowledged the December 3, 2010 $9,000 down payment, removed the January 3, 2010 $9,000 down payment requirement, and added that Serrano would pay the rent "every third week of the month" as well as the "taxes of year 2011." Ramos testified that Serrano failed to pay the 2011 property taxes on the home. According to Ramos, on August 29, 2011, Serrano did not close on the purchase of the home.

Ramos testified that Serrano told Ramos that he no longer wanted to purchase the home, but Serrano continued to live in the home. In response, Ramos filed a forcible detainer suit against Serrano on August 5, 2011, in the justice court in Hidalgo County seeking possession of the property and unpaid rent totaling $1,600 at the time of the filing. Serrano filed an answer to Ramos's lawsuit and asserted a counterclaim against Ramos to recover the $9,000 down payment made on December 3, 2010. The record shows that on August 30, 2011, the justice court ruled in Ramos's favor and ordered Serrano to vacate the North 20th Street home. Additionally, the justice court awarded Ramos damages of $1,600 for past-due rent.

On September 12, 2011, Serrano appealed the justice court's judgment for a trial de novo to the trial court. In his live pleading before the trial court, Ramos alleged a cause of action for breach of contract and sought damages of "not less than" $6,803.45

4

in unpaid rent and property taxes, $2,000 in earnest money, "damages done to the garage door, dishwasher, and door" on the North 20th Street home, and "accrued and unpaid interest on the debt before maturity." Ramos also sought pre- and post-judgment interest as well as attorney's fees. Serrano filed an answer denying Ramos's allegations. Furthermore, Serrano re-urged his counterclaim seeking to recover the $9,000 paid on December 3, 2010 as a down payment.

After a trial on the merits, the trial court ruled in Ramos's favor and awarded him the following damages: (1) $4,800 in unpaid rent; (2) $2,000 in earnest money; (3) $2,003.45 in 2011 property taxes; (4) $550 for repairs to the North 20th Street property; and (5) $750 for replacement of the garage door. Furthermore, the trial court awarded Ramos attorney's fees totaling: $5,000 for the trial court proceedings; $8,000 if this case was appealed to this Court; and $20,000 if this case was appealed to the Texas Supreme Court. This appeal followed.

## II. SUBJECT-MATTER JURISDICTION

By his first issue, Serrano asserts that the trial court erred in denying his motion to sever Ramos's claims for recovery for rent, earnest money, property taxes, and repairs to property and the garage door because they were not related to the forcible detainer action brought in the underlying justice court proceeding, and therefore, outside the trial court's subject matter jurisdiction to the appeal. Although Serrano filed a motion to sever, which was ultimately denied by the trial court, the arguments contained in that motion challenge the trial court's subject matter jurisdiction over Ramos's claims, so we

5

will address Serrano's issue as such.[1] Finally, because the disposition of Serrano's first issue also relates to the disposition of his fifth and sixth issues, we will address them herein as well.

## A. Standard of Review and Applicable Law

Subject matter jurisdiction is an issue that may be raised for the first time on appeal, and it may not be waived by the parties. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444–45 (Tex. 1993). The reasoning behind this rule is that subject matter jurisdiction is essential to the authority of a court to decide a case. *Id.*

In a case of forcible entry or of forcible detainer, a justice court in the precinct in which the real property is located has original jurisdiction over the proceedings. *See* TEX. GOV'T CODE ANN. § 27.031(a)(2) (West, Westlaw through 2013 3d C.S.); TEX. PROP. CODE ANN. § 24.004(a) (West, Westlaw through 2013 3d C.S.). The only issue to be decided in a case of forcible entry or of forcible detainer brought under section 24 of the Texas Property Code is "the right to actual possession" of the property. TEX. R. CIV. P. 746.[2] However, a suit for rent may be joined with an action of forcible entry and detainer, wherever the suit for rent is within the jurisdiction of the justice court. *See* TEX. R. CIV. P. 738. In such a case where rent is sought, the justice court rendering judgment in the action of forcible entry and detainer may at the same time render judgment for any rent

---

[1] We note that Serrano also filed a motion for directed verdict/motion to dismiss on jurisdictional grounds.

[2] Since the initial filing of this case, the rules of civil procedure governing forcible detainer actions in justice courts were repealed by order of the Texas Supreme Court. *See* TEX. SUP. CT., *Final Approval of Rules for Justice Court Cases*, Misc. Docket No. 13-9049 (April 15, 2013) (promulgating Rules 500–510 and repealing Rules 738–758of the Texas Rules of Civil Procedure effective August 31, 2013). However, because the repealed version of the rules govern this case, we will cite and refer to them solely for purposes of this opinion.

due the landlord by the renter, provided the amount thereof is within the jurisdiction of the justice court. *Id.* Additionally, damage claims related to maintaining or obtaining possession of the premises may be joined with the detainer action and litigated in the county court. *See Krull v. Somoza*, 879 S.W.2d 320, 322 (Tex. App.—Houston [14th Dist.] 1994, writ denied) (citing Tex. R. Civ. P. 752, the repealed rule discussing recoverable damages incident to the forcible detainer action "suffered for withholding or defending possession of the premises during the pendency of the appeal"). Damages for other causes of action (i.e., wrongful termination) are not recoverable in a forcible entry and detainer action. *Id.* Thus, the damages recoverable under former Rule 752 "are limited to those expenses and losses related to maintaining or obtaining possession of the premises." *Hanks v. Lake Towne Apartments*, 812 S.W.2d 625, 626 (Tex. App.—Dallas 1991, writ denied).

We agree with the *Hanks* court that the action of forcible detainer was created by the legislature to "provide a speedy, simple, and inexpensive means for resolving the question of the right of possession of premises." *Id.* Thus, confining the damages that may be sought to those suffered as a direct result of withholding or defending possession promotes this legislative purpose. *Id.* "If other more remotely related claims arising out of the tenant-landlord relationship could be asserted in the county court, the forcible detainer proceedings would almost certainly be less speedy, more complex, and more expensive." *Id.* With this framework in mind, we turn to the specific facts of this case.

## B.      Ramos's Claims

The relevant question in this issue is whether the damages sought by Ramos were outside the trial court's jurisdiction because they did not relate to actual possession of the

7

property, collection of rent, or other damages suffered for withholding or defending possession of the premises during the pendency of the appeal.

The record shows that Ramos sought possession of the North 20th Street home, as well as past rent due, when he filed his complaint for forcible detainer on August 5, 2011, in the justice court. Therefore, we hold that the trial court had subject matter jurisdiction over Ramos's claim for unpaid rent. *See* TEX. R. CIV. P. 738.

Next, we turn to Ramos's claims related to the earnest money contract, property tax addendum, and repairs made to the property prior to Serrano moving into the North 20th Street home. These claims for damages relate to either the October 22 agreement, May 10 release of earnest money, or May 10 addendum. Stated another way, none of these damages are associated with determining the right to actual possession of the property, collection of rent, or other damages suffered for withholding or defending possession of the premises during the pendency of the appeal. *See id.* R. 738, 746, 758; *Krull*, 879 S.W.2d at 322. As a result, the trial court lacked subject matter jurisdiction over these claims and erred by not dismissing them.

Next, we examine Ramos's claim for damages related to the replacement of the locks and garage door. In his pleading, Ramos alleged that Serrano had caused damage to the property's garage door, dishwasher, and front door. According to Ramos, when he retook possession of the home, Serrano did not give him the keys to the door or remote control to the garage. As a result, Ramos had to change the garage door, garage door control, and front door locks to the home. We hold that these damages relate to expenses and losses related to Ramos's repossession of the premises and are thus within the trial court's subject matter jurisdiction. *See Hanks*, 812 S.W.2d at 626.

8

To summarize, the trial court had subject matter jurisdiction over Ramos's claims for unpaid rent and damages related to the replacement of the locks and garage door. Conversely, the trial court did not have subject matter jurisdiction over Ramos's claims to the earnest money, unpaid property taxes, or reimbursement for repairs made to the property prior to Serrano moving in because these claims are not recoverable in a forcible entry and detainer action.[3] *See Krull*, 879 S.W.2d at 322. Therefore, the trial court erred by not dismissing these three claims for want of jurisdiction. Serrano's first issue is overruled in part and sustained in part.

## C. Serrano's Claims

In response to Ramos's original forcible detainer action, Serrano filed a counterclaim to recover the $9,000 down payment paid to Ramos on December 3, 2010 pursuant to the purchase agreement. By his fifth issue, Serrano asserts that the trial court "failed to address" his counterclaim to recover the $9,000 down payment made to Ramos pursuant to the real estate purchase agreement.

Like Ramos's additional claims, we must examine Serrano's counterclaim and determine whether the damages sought by Serrano's counterclaim were outside the trial court's jurisdiction because the damages did not relate to actual possession of the property, collection of rent, or other damages suffered for withholding or defending possession of the premises during the pendency of the appeal. *See* TEX. R. CIV. P. 738; *Krull* 879 S.W.2d at 322; *Hanks*, 812 S.W.2d at 626.

---

[3] We express no opinion on the merits of these three claims, and nothing in this opinion prevents Ramos from pursuing these claims in a separate lawsuit. *See generally* TEX. PROP. CODE ANN. § 24.008 (West, Westlaw through 2013 3d C.S.) ("An eviction suit does not bar a suit for trespass, damages, waste, rent, or mense profits.").

After reviewing the pleadings, we hold that Serrano's counterclaim did not relate to any of the allowed damage recoveries in a forcible detainer. *See Krull* 879 S.W.2d at 322; *Hanks*, 812 S.W.2d at 626. Therefore, the trial court did not err for not ruling on Serrano's counterclaim because it was without subject-matter jurisdiction to do so. We overrule Serrano's fifth issue.

By his sixth issue, Serrano asserts that the trial court "failed to address Serrano's appeal of the forcible detainer judgment" rendered by the justice court. Serrano simply argues in his brief that "the trial court . . . wholly failed to address the issue of [Serrano's] appeal of the justice court's judgment of forcible entry in appellee's favor." Because we are unclear as to what specifically Serrano is contending, we find this issue inadequately briefed. *See* TEX. R. APP. P. 38.1(i) ("[Appellant's] brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."). Serrano's sixth issue is overruled.

## III. SUFFICIENCY CHALLENGE

By Serrano's second issue, Serrano asserts that the evidence is legally and factually insufficient to sustain the trial court's judgment.

## A. Applicable Law and Standard of Review

When neither party requests findings of fact or conclusions of law, it is implied that the trial court made all fact findings necessary to support its judgment. *Sixth RMA Partners, L.P. v. Sibley*, 111 S.W.3d 46, 52 (Tex. 2003).[4]

---

[4] Although Serrano requested findings of fact and conclusions of law, his request was untimely. *See* TEX. R. CIV. P. 296 (explaining that a request for findings of fact and conclusions of law shall be filed within twenty days of the signing of the judgment).

10

When an appellant attacks the legal sufficiency of an adverse finding on an issue for which he did not have the burden of proof, the appellant must demonstrate that there is no evidence to support the adverse finding. *Editorial Caballero, S.A. de C.V. v. Playboy Enters., Inc.*, 359 S.W.3d 318, 328 (Tex. App.—Corpus Christi 2012, pet. denied) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005)). A no-evidence challenge will be sustained only if: (1) there is a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact. *City of Keller*, 168 S.W.3d at 810; *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003). "The final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 770 (Tex. 2010). We must view the evidence in the light most favorable to the verdict and "must credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not." *Id.* (citing *City of Keller*, 168 S.W.3d at 822–27).

In reviewing a factual-sufficiency challenge to a finding on an issue on which the appellant did not have the burden of proof, we consider and weigh all of the evidence and set aside the verdict only if the evidence that supports the jury finding is so weak as to make the verdict clearly wrong and manifestly unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). We must examine both the evidence supporting and that contrary to the judgment. *Editorial Caballero*, 359 S.W.3d at 329. Additionally, the fact-finder is the sole judge of the witnesses' credibility, and it may choose to believe one witness over

11

another, and we may not impose our own opinion to the contrary. *Id.* (citing *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003)).

**B.    Discussion**

Serrano argues that the trial court erred in finding in Ramos's favor because Serrano did not breach the parties' contract because his performance under the contract "was contingent upon [him] obtaining financing."    The elements for a breach of contract are:   (1) the existence of a valid contract; (2) that the plaintiff performed or tendered performance; (3) that the defendant breached the contract; and (4) that the plaintiff was damaged as a result of the breach.    *Sauceda v. GMAC Mortg. Corp.*, 268 S.W.3d 135, 140 (Tex. App.—Corpus Christi 2008, no pet.).    Before addressing Serrano's argument, however, we must first determine which contract controls the underlying judgment and whether it was valid.

Here, there are essentially two agreements at issue.    The first concerns the sale of the North 20th Street home that was originally entered into by Serrano and Ramos on October 22, 2010 and contingent upon Serrano receiving financing.    As highlighted in this opinion, this agreement continued to be modified by the parties, further extending Serrano's closing deadlines, in order to allow Serrano to obtain financing.    The second agreement, known as the "Buyer's Temporary Residential Lease," concerns Serrano's lease of the North 20th Street home from October 22, 2010 until: (1) he closed on the purchase of the home; (2) terminated the contract to purchase the home before closing; (3) defaulted under the terms of the lease; or (4) defaulted under the terms of the purchase agreement.    Ramos's viable claims were brought under a forcible detainer action, collection of unpaid rent, and damages related to obtaining possession of the

12

North 20th Street home following the justice court proceeding. Thus, we will analyze whether the evidence sufficiently supports a finding that Serrano breached his lease agreement, in any of the four ways specified in the lease agreement, to support Ramos's claims.[5]

The record is clear and undisputed that Serrano never obtained financing to close on the purchase of the North 20th Street home by the parties' final closing deadline of August 29, 2011. Furthermore, Ramos testified that Serrano failed to pay the $800 rent for months, which was in breach of the lease terms. According to Ramos's complaint for forcible detainer, Ramos demanded that Serrano vacate the home on July 7, 2011 because he owed $1,600 in past-due rent. Ramos testified that Serrano continued to live in the home after July 7, 2011, and unpaid rent continued to accumulate. In his defense, Serrano claimed to have made nine payments of $800 to Ramos for rent and also used his $2,000 earnest money to pay a portion of the rent as well, totaling $7,400 in total rent payments. Aside from the $2,000 earnest money, Serrano produced at least four faded check receipts for $800 each made out to Ramos, and one payment receipt for $1,200.

After viewing the evidence in the light most favorable to the verdict crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not, we conclude that this evidence is legally sufficient to support the trial court's finding that Serrano breached his lease agreement with Ramos. *See Del Lago Partners* 307 S.W.3d at 770. Furthermore, after examining and weighing both the

---

[5] Serrano only challenges the sufficiency of the evidence with regard to the element of breach. Therefore, we will not address the other elements of a breach of contract action. *See* TEX. R. APP. P. 47.1.

13

evidence supporting and contrary to the judgment, we conclude that the verdict is not clearly wrong and manifestly unjust to render the finding that Serrano breached his lease agreement factually insufficient. *See Cain*, 709 S.W.2d at 176; *Editorial Caballero*, 359 S.W.3d at 329. Serrano's second issue is overruled.

## IV. DAMAGES AWARD

By his third issue, Serrano contends that the trial court erred in awarding damages to Ramos because it was without jurisdiction to hear any of Ramos's claims for damages.

## A. Discussion

As we held earlier in this opinion, we partially agree with Serrano that the trial court was without jurisdiction to hear Ramos's claims as they related to the earnest money agreement, the 2011 property taxes agreement, and repairs to the property prior to Serrano's move into the property. As a result, those damages were improperly awarded by the trial court because the trial court lacked the subject-matter jurisdiction to do so in this particular proceeding. Therefore, we hold that the trial court erred in awarding $2,000 in damages for the earnest money contract; $2,003.45 in recovery of the unpaid 2011 property taxes; and $550 for reimbursement of repairs made prior to Serrano moving into the property.

However, the trial court did have subject-matter jurisdiction to hear Ramos's claims for damages related to unpaid rent and damages to the door and garage door. Furthermore, we have also concluded that sufficient evidence exists to show that Serrano breached his lease agreement with Ramos, which was the controlling agreement of the forcible detainer action, not the purchase agreement, as Serrano contends on the appeal. Accordingly, the trial court did not err in awarding the remaining damages for unpaid rent

14

and replacement of the garage door.[6]    Serrano's third issue is sustained in part and overruled in part.

## V.    ATTORNEY'S FEES

By his fourth issue, Serrano contends that the trial court abused its discretion in awarding Ramos attorney's fees of $5,000, plus appellate fees, because legally insufficient evidence supports the trial court's award.

### A.    Applicable Law and Standard of Review

Texas Rule of Civil Procedure 752 allows only the prevailing party in a forcible detainer appeal before a county court to recover reasonable attorney fees, upon pleading and proof, and provided that the requirements of Texas Property Code Section 24.006 have been met.    TEX. R. CIV. P. 752.    Section 24.006 states than in order for a party to be eligible for attorney's fees in a forcible detainer action:    (1) the landlord must give a tenant who is unlawfully retaining possession of the landlord's premises a written demand by registered or certified mail, return receipt requested, at least 10 days before the date of the suit is filed, to vacate the premises, and the demand must state that if the tenant does not vacate the premises before the 11th day after the date of receipt of the notice and if the landlord files suit, the landlord may recover attorney's fees; or (2) if a written lease entitles the landlord to recover attorney's fees.    TEX. PROP. CODE ANN. § 24.006(a)–(b) (West, Westlaw through 2013 3d C.S.).

---

[6] In his brief, Serrano argues that the trial court's measure of damages was inaccurate under the real estate purchase contract.    Serrano does not challenge the sufficiency of evidence regarding the damages as they relate to unpaid rent or costs associated with Ramos taking repossession of the property. Because, we have already held that the contract at issue in this action is related to the breach of the lease agreement, and not the purchase agreement of the home, we decline to address Serrano's challenge to damages pursuant to the real estate purchase contract.    *See* TEX. R. APP. P. 47.1.

The record must reflect that the award was reasonable and not an abuse of discretion. *See Bruce v. Fed. Nat. Mortg. Ass'n*, 352 S.W.3d 891, 894 (Tex. App.—Dallas 2011, pet. denied); *Carlson's Hill Country Beverage v. Westinghouse Rd. Joint Venture*, 957 S.W.2d 951, 956 (Tex. App.—Austin 1997, no writ). Thus, a trial court abuses its discretion if it awards attorney's fees under this provision without legally or factually sufficient evidence that the attorney's fees awarded were reasonable. *See, e.g., Charette v. Fitzgerald*, 213 S.W.3d 505, 512 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (construing a landlord-tenant statute that provided for "reasonable attorney's fees").

**B.    Discussion**

The lease agreement in this case provides for reasonable attorney's fees to the prevailing party "in any legal proceeding brought under" the lease agreement. Serrano solely argues, however, that "no evidence" supports the trial court's award of attorney's fees in this case. Thus, we treat this argument as a legal sufficiency challenge. A no-evidence challenge will be sustained only if: (1) there is a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact. *City of Keller*, 168 S.W.3d at 810.

Ramos's counsel offered the following relevant testimony in support of his claim for attorney's fees:

> I am an attorney licensed by the Supreme Court in the State of Texas to practice in all of Texas, Judge. I've been working as an attorney for the past approximately 10 years.

16

> Now I did represent Mr. Ramos from the time that he—the appeal [sic] was filed up until today which is the conclusion. My hourly rate was $225 an hour and in my expert opinion all of the work that was done was necessary to bring forth the suit and the number of hours set forth that I put into the case were a reasonable and necessary fee that I'm charging is $15,000.
>
> . . . .
>
> And in the event that it's appealed I'm requesting an additional $8,000 for the appeals court and another [$20,000] if it gets appealed further to the Supreme Court.

No other evidence was submitted on the issue of Ramos's attorney's fees, and Serrano's counsel did not cross-examine Ramos's attorney.

When a trial court determines whether a fee is reasonable, it should consider the following factors: (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly; (2) the likelihood . . . that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered. *See El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 761 (Tex. 2012); *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997); TEX. DISCIPLINARY R. PROF'L CONDUCT 1.04(b).

Ramos's counsel's brief testimony touched on his experience as a lawyer in Texas,

17

a general statement about how long he has worked on this specific case, and his hourly rate. Ramos testimony, however, did not explain: (1) the time and labor required in this case, (2) what specific work and services were accomplished, (3) what skill was required to properly perform legal services in this case, (4) what were the fees customarily charged in Hidalgo County for similar legal services, or (5) other factors that would explain the reasonableness of his fee. Furthermore, Ramos offered conclusory testimony related to his contingent appellate fees, without any justification for the cost or how the fee was determined, and he did not introduce any billing statements or invoices related to his representation on this case. Finally, although Ramos's brief argues that he was entitled to the award, it does not analyze or explain how the fee was reasonable and why the trial court did not abuse its discretion in making such an award.

Accordingly, in light of this record, we conclude that the trial court abused its discretion in awarding Ramos attorney's fees because the evidence offered by Ramos's counsel to prove the reasonableness of his fees is no more than a mere scintilla, and consequently, legally insufficient. *See City of Keller*, 168 S.W.3d at 810. We sustain Serrano's fourth issue.

## VI. CONCLUSION

Because we partially sustain Serrano's first and third issues on jurisdictional grounds, we vacate the trial court's damages award in Ramos's favor to recover: (1) $2,000 in earnest money; (2) $2,003.45 in unpaid property taxes for the year 2011; and (3) $550 for repairs made to the property prior to Serrano moving in, and further dismiss those three claims without prejudice for want of jurisdiction. Because we sustain Serrano's fourth issue, we reverse the trial court's award of attorney's fees in Ramos's

18

favor and render that he take nothing in attorney's fees.   The remainder of the judgment

is affirmed.

GINA M. BENAVIDES,
Justice

Delivered and filed the
18th day of June, 2015.